27292.  SCOTT v. THE STATE.

Submitted June 14, 1972—Decided October 5, 1972.

*Dan C. Mitchell,* for appellant.

*Lewis R. Slaton, District Attorney, Joel M. Feldman, Morris H. Rosenberg, Carter Goode, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, Richard S. Gault, Assistant Attorneys General,* for appellee.

HAWES, Justice. Lee Scott was jointly indicted with five other named individuals, charged with the offense of armed robbery and in a separate indictment with the offense of aggravated assault upon the person of one Emeterio Alvarez. He plead not guilty on both indictments and upon his separate trial was found guilty as to both charges. His motion for a new trial on the general grounds and on several special grounds was overruled and he appealed.

The evidence showed that the accused was employed as a night steward by the Diplomat Restaurant in the City of Atlanta. As such, it was his duty to supervise the preparation and serving of the food by the restaurant personnel, to hire and fire kitchen help, including dishwashers, and generally to superintend the cleanup in the restaurant after it had closed for the day. The cash register wherein the money received in payment for the service of food to the restaurant's customers was held was in the kitchen area of the restaurant. The robbery occurred at about 1:30 o'clock on Sunday morning, November 29, 1971. The robbery itself was actually perpetrated by four individuals who had at one time or another worked in the restaurant as dishwashers employed by the accused, Scott. Three of those charged had plead "guilty" or had been tried and found guilty and, at the time of the trial, were serving sentences imposed upon them as a result thereof. One of the alleged perpetrators of the crimes had fled and had not been apprehended. The State's case against this defendant was based essentially on the theory that he had advised, encouraged, hired or counseled the four who actually committed the crimes to commit the robbery and had planned it and participated

therein by giving a signal to the perpetrators so as to advise them when the time for their entry into the restaurant for the purpose of perpetrating the robbery was propitious. During the course of the robbery a gun in the hands of one of the perpetrators was discharged and Alvarez, who was captain in charge of the lounge, was struck and wounded.

■ In his opening statement to the jury, the assistant district attorney outlined the charges against the accused and followed with this statement: "Now . . . we do not contend that this defendant on trial was a direct participant in the actual robbery as it was carried out, that is, he is not, and the evidence will not show, that he shot the gun or even had the gun or that he directly participated in the commission of the offense. The evidence, I believe, will show, consistent with the State's theory and the theory being a conspiracy theory—." At that point, counsel for the defendant interrupted the assistant district attorney and objected to that statement. A colloquy ensued out of the presence of the jury in which counsel for the accused contended that the accused was not charged with the crime of conspiracy but with the offenses of armed robbery and aggravated assault, and that to mention the word "conspiracy" was highly prejudicial to the defendant's interest. He moved for a mistrial on this ground. The court denied that motion, and that ruling formed the basis for one of the grounds of the appellant's motion for a new trial. In one of the other grounds of his motion he complains of the charge of the court to the jury in which the court submitted to the jury the theory of conspiracy as it related to the charges against the defendant. Appellant's contention in this regard is that under Ch. 26-32 of the Criminal Code of Georgia conspiracy is made a separate and distinct crime; that the accused was not charged under that chapter, and that to submit to the jury the question of conspiracy had the effect of permitting them to consider a charge against the defendant which had not been made by the State. There is no merit in this contention.

Prior to the passage of the Act approved March 18, 1968 (Ga. L. 1968, p. 326), except as provided in former *Code*

§ 26-1901 relating to conspiracy to falsely charge another with the commission of a crime, there was no separate crime of conspiracy in Georgia. The provisions of the 1968 Act which were repealed by the enactment of the Criminal Code of Georgia were substantially embodied in Ch. 26-32 of that Code which became effective on July 1, 1969. It is manifest from a reading of that chapter of the Criminal Code of Georgia that it was the intent of the legislature to make conspiracy itself a separate crime only in cases where the crime conspired to be committed had not in fact been committed, that is, where the conspiracy had been, so to speak, "nipped in the bud." Section 26-801 of the Criminal Code of Georgia defines parties to a crime and provides that every person concerned in the commission of a crime is a party thereto and may be charged and convicted of the commission of the crime. Insofar as is material to this case, that section provides that a person is concerned in the commission of a crime if he intentionally aids or abets in the commission of the crime, or advises, encourages, hires, counsels or procures another to commit the crime. While this Code section does not use the word "conspiracy" it is plain that it embodies the theory of conspiracy insofar as it renders one not directly involved in the commission of a crime responsible as a party thereto. Under the evidence in this case, the charge against the defendant was based on that theory, that is, that he had conspired with those who actually committed the crime to procure them to commit it and the trial court did not err in charging the jury on the theory of conspiracy as complained of in the motion for a new trial. See *Bruster v. State*, 228 Ga. 651 (3) (187 SE2d 297); *Caldwell v. State*, 227 Ga. 703, 705 (182 SE2d 789).

◼ In two grounds of his amended motion for a new trial appellant made and urges before this court the contention that it was error to allow the testimony of Clarence York and George McDaniel as to the facts and circumstances surrounding the robbery and aggravated assault. Those two along with another witness, Dinnes Jones were among

those jointly indicted with the defendant for the same crime, had either plead guilty or been previously tried and convicted, and were called as witnesses for the State. Both York and McNeal testified directly that they had upon the solicitation of the accused made an agreement with him to rob the Diplomat Restaurant and that he planned the robbery and participated in the proceeds thereof by receiving a share of the money taken. Jones, called by the State, testified that he plead guilty to the robbery and that he knew the defendant but he denied that the defendant was implicated. A careful examination of the transcript fails to reveal that counsel for the appellant made any general objection to the competency of these witnesses to testify. It is well established in this State that "one may be legally convicted of a felony other than treason or perjury where the only evidence directly connecting him with the offense charged is the testimony of an accomplice, and where the only corroboration is the testimony of other accomplices." *Hope v. State,* 171 Ga. 655 (156 SE 599); *Park v. State,* 224 Ga. 467, 476 (162 SE2d 359). These witnesses presented direct evidence on the trial of the case as to the participation of the defendant on trial in the conspiracy to rob the Diplomat Restaurant. Under the cases just cited, the testimony of Clarence York and George Frank McNeal as to the participation of the defendant in the conspiracy and robbery was sufficient to authorize the verdict of guilty. The extrajudicial statement of Dinnes Jones was introduced solely for the purpose of impeaching him, since on the trial of the case he repudiated his previous confession which had implicated the defendant and that statement was admissible for that purpose, if for no other. The trial court so instructed the jury when the statement was admitted and expressly limited their consideration of it for the purpose of impeachment and for no other. It follows that ground 15 of appellant's enumeration of error complaining of the admission of that statement is without merit, and so are grounds 6 and 7 of the motion for a new trial and grounds 6 and 7 of appellant's enumeration of errors.

■ In the 8th and 9th grounds of enumerated error, appellant contends that the trial court committed reversible error in its remarks made to and in the presence of the jury wherein reference was made to the appellate courts of this State. Appellant relies on and apparently invokes the doctrine of such cases as *Monroe v. State*, 5 Ga. 85 (5) wherein this court disapproved instructions to the jury which were calculated to weaken and diminish the jury's sense of responsibility in performing its duties. Without detailing the comments in this case, it is sufficient to say that the remarks complained of were mere abstract references to the appellate courts, and they did not in any way tend to express doubt as to the correctness of any ruling made by the court or suggest to the jury that their responsibility in deciding the issues of the case could be lightly discharged because of the possibility of an appeal or of consideration of the case by the appellate courts. These grounds are without merit.

■ In ground 10 of his enumeration of errors appellant contends that the court erred in constantly arguing with and interrupting counsel for the defendant during the course of the trial of the case. The only reference to a portion of the transcript cited in support of this contention obviously relates to colloquy between the court and counsel had out of the presence of the jury. Assuming that the conduct of the court in that instance was such as characterized by appellant in this ground of his enumerated error it could have had no prejudicial effect insofar as the jury was concerned. It is incumbent upon the appellant under Rule 18 (c) (3), 226 Ga. 905, 914, to point out in the record or the transcript where the error claimed is shown to have occurred. This is especially true as respects a ground of enumerated error in a case such as this where this court is dealing with a transcript of over 800 pages. No single instance where the conduct of the court could be described as constantly arguing with counsel for the defense, not permitting the counsel for the defense to complete his arguments and objections to the court, and constantly interrupt-

ing counsel's train of thought has been found by this court to have occurred in the presence of the jury (if indeed at all) as shown by the transcript. This ground of enumerated error is likewise without merit.

■ We have carefully examined the charge of the court given during the guilt-innocence phase of the trial, and we do not find it to have been unduly repetitious in instructing the jury as to what they must find in order to find the accused guilty.

■ Whenever improper argument is made to the jury by an attorney for one of the parties, or an improper comment is made by the court in the presence of the jury, "it is necessary, in order to make the same a basis for review, that opposing counsel make proper objection to it at the time made or invoke some ruling or instruction from the court respecting it either by way of reprimanding counsel," or by expressly drawing the improper comment to the attention of the jury and by instructing the jury to disregard the same, and if the court refuses to grant that remedy to the movant, then it is incumbent upon him to ask the court to declare a mistrial. "A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later." *Joyner v. State,* 208 Ga. 435, 438 (67 SE2d 221); *Riggins v. State,* 226 Ga. 381 (2) (174 SE2d 908). Accordingly, the remarks of the court to a witness for the State that the court would afford the witness protection and that he could testify without fear, if improper as contended by the appellant, afford no basis for a reversal of the case, since no objection or a motion for a mistrial was made at the time such remarks were made or at any other time during the trial of the case.

■ The evidence authorized the verdicts of guilty. In addition to the evidence outlined above, there was circumstantial evidence to the effect that the accused habitually sat in a chair near the place where the money was being counted after the restaurant closed; that he did this almost without exception every night prior to the night of the robbery, but at the time and on the occasion of the robbery he was not

in his usual place. There was also evidence that shortly before the robbers appeared he opened an outside door and remarked in a loud voice that it was getting cold outside. The witness who testified to this further testified that in her opinion the weather was not such as to call for that remark, and that since there was no one other than herself present at the time, she wondered then why the accused was shouting because she could have heard him had he spoken in a normal tone of voice. This evidence was some circumstantial evidence in corroboration of the direct testimony of two accomplices of the accused implicating him in the robbery.

*Judgment affirmed. All the Justices concur.*