## 62988. OSBORN v. THE STATE.

BANKE, Judge.

The appellant was convicted in Gwinnett County upon an indictment charging him with selling 10 pounds of marijuana in that county on February 5, 1980, in violation of the Georgia Controlled Substances Act. The evidence did not establish that he participated directly in the sale but established merely that he supplied the marijuana to a dealer named Fallon, who then brought it into Gwinnett County and sold it to an undercover agent named Goodbar.

Detective Goodbar testified that he first met Fallon early in January of 1980 and that several times thereafter Fallon spoke to him of a large shipment of marijuana that would be "coming in" soon. Goodbar expressed a desire to purchase some of this marijuana, and on February 5, 1980, Fallon telephoned him to report that he (Fallon) could deliver 10 pounds at a price of $3,750. Goodbar agreed to these terms, and the two met that same day at a location in Gwinnett County to consummate the deal. Fallon was arrested immediately after delivering the marijuana to Goodbar and accepting the $3,750 payment.

Upon his arrival at Gwinnett County police headquarters, Fallon disclosed that he had obtained the marijuana from a man in DeKalb County known to him only as "Herb." He further disclosed that he was scheduled to meet "Herb" that same evening at a DeKalb County restaurant to pay him for the contraband. Goodbar escorted Fallon to the restaurant to keep this appointment, returning the $3,750 to him so that he could make the required payment. Fallon testified at trial that he actually owed "Herb" less than this amount but that he neglected to tell this to the police. Before leaving Gwinnett County, Fallon telephoned "Herb" to confirm their

appointment and told him to bring along another 25 pounds of marijuana.

Under close surveillance by Gwinnett and DeKalb County police, Fallon met "Herb" in the restaurant parking lot as planned and gave him "the money." The two men then entered their respective vehicles and drove across the street to another parking lot, whereupon "Herb" took two bags of marijuana from the trunk of his car and delivered them to Fallon. The police immediately converged and arrested "Herb," but the $3,750 was nowhere to be found. At trial, Fallon identified the appellant as being "Herb."

Fallon testified that he had first met the appellant on February 4, 1980, in DeKalb County and that at this meeting the appellant had "fronted" him the 10 pounds of marijuana which he was arrested for selling to Detective Goodbar the following day. Also present at this meeting was a person named Butler, from whom Fallon had previously obtained drugs. Fallon testified that Butler introduced him to the appellant and told him that in the future he should contact the appellant "about getting any more pot." Fallon further testified that there was no discussion about how or where he was to dispose of the 10 pounds of marijuana, the agreement being merely that he would "go and sell it and bring their money back to them." On appeal, the appellant's primary contention is that there was no evidence to support a finding of venue in Gwinnett County. *Held:*

1. Where a person intentionally aids or abets in the commission of a crime, or advises, encourages, hires, counsels or procures another to commit the crime, he may be convicted of commission of that crime pursuant to Code Ann. § 26-801 (b) (3, 4). "While this Code section does not use the word 'conspiracy' it is plain that it embodies the theory of conspiracy insofar as it renders one not directly involved in the commission of a crime responsible as a party thereto." *Scott v. State,* 229 Ga. 541 (1) (192 SE2d 367) (1972). Thus, where the crime is completed, a defendant may be convicted of it based on his activities as a conspirator, even though conspiracy is not alleged in the indictment. See *Bruster v. State,* 228 Ga. 651 (3) (187 SE2d 297) (1972). Venue in such a case is properly laid in the county in which the substantive offense is committed, even though the defendant may never have entered that county. See *Jackson v. State,* 29 Ga. App. 324 (4) (115 SE 507) (1923); *Welch v. State,* 49 Ga. App. 380 (2), 387-389 (175 SE 598) (1934); *Jones v. State,* 135 Ga. App. 893 (7), 900 (219 SE2d 585) (1975).

It has been held that the mere agreement of one person to buy contraband which another agrees to sell does not establish that the two acted in concert so as to support a finding of conspiracy. See United States v. Mancillas, 580 F2d 1301, 1307 (7th Cir., 1978), and

cases cited therein. However, where the supplier "fronts" contraband to a recipient with the expectation that the latter will sell it and pay him from the proceeds, it has been held that he retains a sufficient interest in the subsequent sale to establish that he acted in concert with the recipient to distribute the contraband. See United States v. Caplan, 633 F2d 534 (9th Cir., 1980); United States v. Boone, 641 F2d 609 (8th Cir., 1981). Compare United States v. Harbin, 601 F2d 773 (5th Cir., 1979). Since Fallon's testimony indicates that the appellant did exactly this, it authorized the conclusion that the appellant was a party or a conspirator to the Gwinnett County sale. Fallon's testimony was amply corroborated by Detective Goodbar's testimony that he personally witnessed the transaction which took place at the DeKalb restaurant. See generally Code § 38-121; *Smith v. State,* 245 Ga. 205 (2) (264 SE2d 15) (1980); *Birt v. State,* 236 Ga. 815, 826 (225 SE2d 248) (1976); *Whitfield v. State,* 159 Ga. App. 398 (6) (283 SE2d 627) (1981). Consequently, the evidence was sufficient to enable a rational trier of fact to find the appellant guilty beyond a reasonable doubt of participating in the Gwinnett County marijuana sale charged in the indictment. See generally *Crawford v. State,* 245 Ga. 89 (1) (263 SE2d 131) (1980).

2. The appellant contends that under the Controlled Substances Act as it currently exists, any substance which contains any amount of tetrahydrocannabinols (THC) cannot legally be considered marijuana but must instead be considered a Schedule I controlled substance. The state's expert testified under cross-examination that the substance in question did in fact contain THC.

Code Ann. § 79A-802 (o) (Ga. L. 1979, pp. 859, 863), in pertinent part, defines marijuana as follows: " 'Marijuana' means all parts of the plant of the genus cannabis, whether growing or not, the seeds thereof; the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; *but shall not include samples as described in section 79A-806 (d) (16). . .*" (Emphasis supplied.) The latter code section, in turn, refers to "[a]ny material, compound, mixture, or preparation which contains any quantity of . . . (16) Tetrahydrocannabinols which shall include, *but are not limited to:* (A) All synthetic or naturally produced samples containing more than 15 percent by weight of tetrahydrocannabinols; and (B) all synthetic or naturally produced tetrahydrocannabinol samples which do not contain plant material exhibiting the external morphological features of the plant cannabis." Code Ann. § 79A-806 (d) (16) (Ga. L. 1979, pp. 859, 863). (Emphasis supplied.)

Both § 79A-802 (o) and § 79A-806 (d) were rewritten in 1979 in direct response to this court's decision in *Aycock v. State,* 146 Ga.

App. 489 (246 SE2d 489) (1978). In that case, we concluded that the definition of marijuana contained in the former version of Code Ann. § 79A-802 (o) (Ga. L. 1974, pp. 221, 226) was broad enough to include pure THC, where derived or prepared from the cannabis plant, and that the definition of THC contained in the former version of § 79A-806 (d), (Ga. L. 1974, pp. 221, 234-235), was broad enough to encompass "any material" containing "any quantity" of that chemical, including unrefined marijuana. On the basis of the rule that where two sections of a statute provide a penalty for the same offense, the section providing the greater penalty is abrogated by the section providing the lesser, we held that any THC sample derived or prepared from the cannabis plant rather than by synthetic means must be considered marijuana. *Aycock,* supra, at 496.

In revising these two statutory provisions, the General Assembly obviously intended to provide objective criteria for distinguishing between marijuana and THC under the Controlled Substances Act. The problem is that the statute as written provides that tetrahydrocannabinols "shall include, but are not limited to" samples which exhibit the objective criteria set forth, i.e., which either contain more than 15 percent by weight of THC or which do not contain plant material exhibiting the external morphological features of the plant cannabis. Does this mean, as the appellant asserts, that any material containing any trace of THC must now be considered a Schedule I controlled substance and that marijuana no longer has any legal existence in this state? We conclude that it does not. "It is a well-established principle that a statute must be viewed so as to make all its parts harmonize and to give a sensible and intelligent effect to each part. It is not presumed that the Legislature intended that any part would be without meaning." *Houston v. Lowes of Savannah, Inc.,* 235 Ga. 201, 203 (219 SE2d 115) (1975). To adopt the construction urged by the appellant would be to presume exactly such an intention on the part of the Legislature, for if marijuana has been legislated out of statutory existence, then Code Ann. § 79A-802 (o), purporting to define it, is a meaningless provision. Rather than reach such an absurd result, we interpret the meaning of the statute to be that any sample containing THC which would otherwise fall under the definition of marijuana shall be considered marijuana unless it either contains more than 15 percent by weight of THC or does not exhibit the external morphological features of the plant cannabis. It follows that the appellant is not entitled to a reversal of his conviction on the basis of the fact that the substance which he supplied to Fallon contained some unspecified amount of THC.

3. Although the evidence was sufficient to establish venue in

Gwinnett County, the trial court did not charge the jury on venue, nor did he otherwise make it clear that the appellant was on trial for a sale of marijuana in Gwinnett as opposed to DeKalb County. Rather, he charged simply that the appellant was indicted "for the offense of violation of the Georgia Controlled Substances Act," and then went on to state, "You will have this indictment out with you, and you can see what the material allegations of the indictment are."

As a general rule, where there is sufficient evidence of venue and the trial court charges the jury generally on the law of reasonable doubt, it is not necessary for the court to charge the jury that proof of venue is a material allegation of the indictment. *Harwell v. State,* 230 Ga. 480 (1) (197 SE2d 708) (1973); *Forehand v. State,* 235 Ga. 295 (3) (219 SE2d 378) (1975). However, where the case against the defendant is based upon his activities as a party or conspirator to the crime charged in the indictment and these activities took place in a county other than the one in which the prosecution is brought, a special instruction on venue is necessary to clarify the nature of the criminal activity for which he is on trial. See *Jones v. State,* 135 Ga. App. 893 (7), 900 (219 SE2d 585) (1975). As indicated above the trial court in this case never made it clear that the appellant was charged with the commission of an offense in Gwinnett County. In view of the nature of the evidence against him, this omission must necessarily be considered reversible error.

4. The court erred in allowing the state to present the opinion of a state crime lab expert that the substance in question was marijuana, over defense counsel's objection that she had not been furnished with a copy of the crime lab report in accordance with her written request made pursuant to Code Ann. § 27-1303 (Ga. L. 1980, p. 1388). In *Tanner v. State,* 160 Ga. App. 266 (1981), this court held that the state could not establish the substance of such a scientific report through oral testimony where failure to comply with the statute rendered the report itself inadmissible. The short-lived contrary holding in *Smith v. State,* 158 Ga. App. 663 (281 SE2d 631) (1981) was overruled. In accordance with *Tanner* any evidence concerning matters contained in the crime lab report in this case must be excluded absent compliance by the district attorney with the code section.

5. The appellant enumerates as error the trial court's dismissal of his motion attacking the indictment for lack of specificity and of his "Brady motion" seeking discovery of information and evidence in the possession of the state which might be favorable to him. The court dismissed the two motions due to counsel's failure to appear at a hearing scheduled thereon.

The indictment alleged a sale in Gwinnett County on February 5, 1980, and this was the date proven at trial. The appellant does not

contend that he was surprised by any of the evidence against him as a result of any ambiguity contained in the indictment or that he was otherwise prevented from preparing his defense. He is fully protected against a subsequent prosecution for the same criminal activity. Consequently, the indictment was not subject to dismissal. See generally *Hopper v. Hampton,* 244 Ga. 361, 362 (260 SE2d 73) (1979); *Seabolt v. State,* 234 Ga. 356 (216 SE2d 110) (1975); *DePalma v. State,* 225 Ga. 465, 469 (169 SE2d 801) (1969). It follows that any error committed by the trial court in refusing to hear the motion to dismiss was harmless as a matter of law.

With regard to the Brady motion, however, we must conclude that the court erred in failing to conduct an in-camera inspection of the state's file. Even absent a Brady motion, the prosecutor is under a duty to disclose clearly exculpatory evidence to the defense. United States v. Agurs, 427 U. S. 97, 106-107 (96 SC 2392, 49 LE2d 342) (1976); *Tribble v. State,* 248 Ga. 274 (280 SE2d 352) (1981). If the defense specifically requests such disclosure and then requests an in-camera inspection because of dissatisfaction with the state's response, the trial court is under a duty to conduct the inspection. *Tribble v. State,* supra. The state's only response of record to the appellant's motion in this case was made immediately prior to trial, when the prosecutor indicated to the court that there was no exculpatory information contained in its file. Defense counsel requested that an in-camera inspection be made at that time, but the request was denied on the basis of the prior dismissal of the Brady motion.

Defense counsel's failure to appear at the hearing on the Brady motion cannot be construed as a waiver by the appellant of his right to discovery of any exculpatory or helpful material which might have been contained in the state's files. Counsel explained that she had been unable to attend the hearing, scheduled for 3:30 p.m., because she was trying a criminal case in another county which had commenced at 9:00 a.m. At 2:30 p.m., she telephoned the Gwinnett court to report that because she was engaged in a trial which was lasting longer than expected, she could not be present in Gwinnett County until 4:30 p.m. Soon thereafter, the Gwinnett court informed her by telephone that the Brady motion had been dismissed. This version of events is not disputed by either the state or the trial court. Because it negates any suggestion of a purposeful waiver of rights, we direct that the trial court conduct an in-camera inspection of the state's file pursuant to *Tribble v. State,* supra, prior to any retrial of this case.

6. The court did not err in allowing Detective Goodbar to relate the substance of his conversations and dealings with Fallon during

the month prior to the marijuana sale. These conversations were relevant and admissible to establish conduct and to set forth the events leading up to the appellant's arrest. See generally Code § 38-302; *Germany v. State,* 235 Ga. 836, 840 (221 SE2d 817) (1976); *Harrell v. State,* 241 Ga. 181 (1) (243 SE2d 890) (1978). The appellant's right of confrontation was not affected, since Fallon was available for cross-examination. In any event, the testimony merely corroborated Fallon's own testimony to substantially the same effect.

Detective Goodbar's testimony that he overheard Fallon telephone someone from the police station and tell that person to bring an additional 25 pounds of marijuana to the restaurant in DeKalb County was similarly relevant and admissible to explain subsequent conduct; and again the testimony merely corroborated Fallon's own testimony.

7. The trial court did not err in allowing Detective Goodbar to state that in his opinion, based on his personal observation and his experience and training as a drug enforcement officer, he believed the substance which he purchased from Fallon to be marijuana. While this testimony certainly did not prove that the substance was marijuana, it was admissible to explain subsequent conduct; and in the face of undisputed expert testimony confirming the observation, it could not have been harmful to the appellant.

8. The trial court did not err in refusing to require Detective Goodbar to disclose the identity of the informant who had introduced him to Fallon, in the absence of any indication of how this information could have been helpful to the defense. See generally *Thornton v. State,* 238 Ga. 160 (2) (231 SE2d 729) (1977). Also the trial court did not err in overruling a defense motion for mistrial made after the court asked Detective Goodbar if there was any reason for the informant to be in fear for his life if his identity were revealed. This question could not have reflected adversely upon the appellant since the informant never had any connection with the appellant. His only connection was with Goodbar and Fallon.

9. The trial court did not err in failing to charge on the burden of proof applicable in a circumstantial evidence case, there being direct evidence of the appellant's participation in the sale. See generally Code § 38-109; *Kendricks v. State,* 231 Ga. 670 (203 SE2d 859) (1974); *Bowen v. State,* 181 Ga. 427 (4) (182 SE 510) (1935). Not only did Fallon testify regarding the appellant's involvement, Detective Goodbar personally witnessed the subsequent payoff at the DeKalb restaurant. Contrary to the appellant's assertions, we find no indication that Fallon contradicted himself or that he was otherwise impeached as a witness. Compare *Stanley v. State,* 239 Ga. 260 (1) (236 SE2d 611) (1977).

10. The remaining enumerations of error have been carefully examined and have been determined either to be without merit or to have been rendered moot by the foregoing.

*Judgment reversed and case remanded. Deen, P. J., and Carley, J., concur.*

DECIDED JANUARY 11, 1982 —
REHEARING DENIED FEBRUARY 2, 1982 —

*Victoria D. Little, Christopher W. Duncan,* for appellant.
*Bryant Huff, District Attorney, Johnny R. Moore, Michael C. Clark, Stephen E. Franzen, Assistant District Attorneys,* for appellee.