73705. HERNANDEZ v. THE STATE.
(357 SE2d 131)

McMURRAY, Presiding Judge.

Via indictment, a Clarke County grand jury charged and accused defendant and Charles May with the offense of trafficking in cocaine. It was charged that on December 8, 1985, defendant and May "did unlawfully deliver and bring into this State more than 400 grams of cocaine." The indictment also charged defendant with being a recidivist. In this regard, it was alleged that on January 19, 1984, defendant

"plead guilty in the United States District Court for the Southern District of Florida [in] Case No. 83-824 CRALH charging Conspiracy to Possess Cocaine and was sentenced to serve three years on probation." In the case sub judice, a jury found defendant guilty upon the trafficking count and the trial court found defendant guilty upon the recidivist count. Defendant was sentenced to serve a period of 30 years, 25 in confinement and the remainder on probation and now appeals. *Held*:

1. " '[V]enue in criminal cases is a matter of jurisdictional fact, and like every other material allegation in the indictment must be proved beyond a reasonable doubt.' *Dickerson v. State*, 186 Ga. 557, 559 (199 SE 142) (1938); see also *Patterson v. State*, 157 Ga. App. 233, 234 (276 SE2d 900) (1981). Where venue is not established by the state, any ensuing judgment is void, although reversal of a conviction on this basis does not prevent retrial in a court where venue is proper and proven. *Patterson v. State*, 162 Ga. App. 455 (291 SE2d 567) (1982); *McCoy v. State*, 62 Ga. App. 575 (8 SE2d 795) (1940)." *Trogdon v. State*, 176 Ga. App. 246, 247 (1) (335 SE2d 481). See also *Jones v. State*, 135 Ga. App. 893, 900 (219 SE2d 585). " 'This is no pedantic, justice-defeating technicality. The dangers of abuse are manifold if the Government can obtain an indictment for conspiracy in a district other than the district where the offense was actually committed merely by alleging that one act, *which need never be proved*, was committed in that district. Surely the Government should not be able to procure an indictment . . . without having to prove to the satisfaction of a jury that at least one act was done in the district of the indictment.' " *Jones v. State*, supra at 901 (quoting *Green v. United States*, 309 F2d 852, 856 (5th Cir. 1962)).

Defendant contends the State failed to prove beyond a reasonable doubt that venue was established in Clarke County. In his first enumeration of error, he asserts that the trial court erred by failing to direct a verdict of acquittal upon this ground. We disagree.

"Evidence to sustain venue may be either direct or circumstantial. *Loftin v. State*, 230 Ga. 92, 94 (195 SE2d 402)." *Keri v. State*, 179 Ga. App. 664, 668 (5) (347 SE2d 236). Accord *Worth v. State*, 179 Ga. App. 207, 208 (2) (346 SE2d 82). In the case sub judice, we find the following direct and circumstantial evidence with regard to the venue question: On December 8, 1985, one Phillip Metzger sold five "kilos" of cocaine to an undercover policeman in Clarke County at which time Metzger was arrested. Metzger had obtained three of the "kilos" from Charles May earlier in the day. That exchange took place when Metzger and May met in DeKalb County. Metzger did not pay May for the three "kilos" when the exchange took place as payment was to come after Metzger sold the cocaine. May waited for Metzger and the money at a motel in DeKalb County. He expected

Metzger to arrive by 5:00 p.m. Metzger never showed but the police appeared. They sought May's cooperation in obtaining evidence against defendant.

Defendant lived and worked in south Florida. May made two long distance telephone calls to defendant following his arrest. The conversations between May and defendant were recorded by the police with May's permission. During the course of the first conversation May told defendant that he had heard nothing from Metzger and that he (Metzger) had taken all three "kilos" of cocaine. Defendant was chagrined. He said he thought that May was only going to give Metzger one "kilo" and he wished that May had not given Metzger all three of them. He also told May to wait at the motel. In the second conversation May told defendant that one of Metzger's friends came by the motel and informed him that "Phil got popped . . ." Trying to calm and reassure May, defendant told him that he had nothing to worry about; that he (May) was just a "tourist"; and that he would get paid. Defendant added: "I'm the one that's going to be wanted because I lost three, you understand . . ."

May testified at the trial. (He pleaded guilty to trafficking in cocaine before the trial began.) He averred that he obtained the cocaine from defendant in Florida; that he was to deliver the cocaine to Metzger in DeKalb County; that he was to be paid $2,000 for delivering the cocaine; and that after he delivered the cocaine Metzger told him to go back to his motel room and wait until Metzger called or came by with the money.

Metzger was called as a defense witness and testified that he did not pay May for the cocaine initially and that he was to give May the money for the cocaine later. He also averred that he had "no idea" whether defendant was connected with the delivery of the cocaine. On cross-examination, Metzger admitted that he shared a business address with defendant; and that, at the time of his arrest, he possessed a business card which bore the telephone numbers of defendant and defendant's girl friend.

Defendant took the stand and testified that he did not give three "kilos" of cocaine to May. He acknowledged that he had had long distance telephone conversations with both May and Metzger during the weekend in which May gave Metzger the cocaine. With regard to the recorded conversations, defendant explained that he was simply trying to find May and keep him calm because he had introduced May to "Juan" and "Juan" made it clear that defendant would have problems if May did not return to Florida with the money.

"Where a person intentionally aids or abets in the commission of a crime, or advises, encourages, hires, counsels, or procures another to commit the crime, he may be convicted of commission of that crime pursuant to Code Ann. § 26-801 (b) (3, 4) [OCGA § 16-2-20 (b) (3, 4)].

'While this Code section does not use the word "conspiracy" it is plain that it embodies the theory of conspiracy insofar as it renders one not directly involved in the commission of a crime responsible as a party thereto.' *Scott v. State*, 229 Ga. 541 (1) (192 SE2d 367) (1972). Thus, where the crime is completed, a defendant may be convicted of it based on his activities as a conspirator, even though conspiracy is not alleged in the indictment. See *Bruster v. State*, 228 Ga. 651 (3) (187 SE2d 297) (1972). Venue in such a case is properly laid in the county in which the substantive offense is committed, even though the defendant may never have entered that county. See *Jackson v. State*, 29 Ga. App. 324 (4) (115 SE 507) (1923); *Welch v. State*, 49 Ga. App. 380 (2), 387-389 (175 SE 598) (1934); *Jones v. State*, 135 Ga. App. 893 (7), 900 (219 SE2d 585) (1975).

"It has been held that the mere agreement of one person to buy contraband which another agrees to sell does not establish that the two acted in concert so as to support a finding of conspiracy. See *United States v. Mancillas*, 580 F.2d 1301, 1307 (7th Cir., 1978), and cases cited therein. However, where the supplier 'fronts' contraband to a recipient with the expectation that the latter will sell it and pay him from the proceeds, it has been held that he retains a sufficient interest in the subsequent sale to establish that he acted in concert with the recipient to distribute the contraband. See *United States v. Caplan*, 633 F2d 534 (9th Cir., 1980); *United States v. Boone*, 641 F2d 609 (8th Cir., 1981). Compare *United States v. Harbin*, 601 F2d 773 (5th Cir., 1979)." *Osborn v. State*, 161 Ga. App. 132, 133-134 (291 SE2d 22).

In the case sub judice, the evidence authorized the conclusion that defendant "fronted" the cocaine to Metzger (via May) with the expectation that Metzger would sell it and pay him the proceeds. Accordingly, the evidence was sufficient to enable a rational trier of fact to find defendant guilty beyond a reasonable doubt of the offense of trafficking in cocaine in Clarke County. *Osborn v. State*, supra.

2. Over defendant's objection, the trial court permitted the prosecutor to ask Metzger, on cross-examination, whether he introduced defendant to a drug dealer so that defendant could purchase drugs. Metzger invoked his Fifth Amendment privilege. In his second enumeration of error, defendant contends the trial court erred in permitting the State to question Metzger about the "similar transaction" because (1) the trial court ruled in limine that evidence of similar transactions was inadmissible and (2) the State failed to give notice of its intent to present such evidence pursuant to the Uniform Rules for the Superior Court. This contention is without merit.

The trial court permitted the State to make the inquiry in question for impeachment purposes. (Metzger testified that he had had no business dealings with defendant.) In ruling in limine that similar

transaction evidence was inadmissible, the court qualified its ruling. It stated that, *in general*, evidence of similar transactions was inadmissible. It did not rule similar transaction evidence inadmissible for all purposes. Thus, it cannot be said that the trial court ran afoul of its in limine ruling. Moreover, it was not necessary for the state to give notice of its intent to question Metzger about the introduction of defendant to the drug dealer. Rule 31.3 of the Uniform Rules for the Superior Court was not "intended to alter the rules of evidence relating to impeachment of witnesses." Rule 31.3 (E), Uniform Rules for the Superior Court (253 Ga. 854).

3. " ' "[I]t is never error for a trial court to refuse to charge on a lesser included offense even though requested in writing when the evidence does not reasonably raise the issue that the defendant may be only guilty of the lesser crime." [Cit.]' [Cit.]" *Green v. State*, 175 Ga. App. 92, 94 (4) (332 SE2d 385). Under the evidence presented in the case sub judice, only two verdicts were possible — guilty of trafficking in cocaine or acquittal. Accordingly, it was not error for the trial court to refuse to charge the jury concerning possession of cocaine. *Cooper v. State*, 180 Ga. App. 37, 39 (2) (348 SE2d 486). Defendant's third enumeration of error is not meritorious.

4. In his final enumeration of error, defendant contends the trial court erred by sentencing him under the recidivist statute. In this regard, defendant points out that following his federal court conviction for conspiracy to possess cocaine he was given a *probated* sentence. Completing the argument, defendant asserts that the recidivist statute has no application unless a person was convicted of a felony and sentenced to *confinement*. OCGA § 17-10-7 (a). Defendant's contention is controlled adversely to him by *Bennett v. State*, 132 Ga. App. 397, 398 (3) (208 SE2d 181) and *Tankersley v. State*, 155 Ga. App. 917, 922 (13) (273 SE2d 862).

*Judgment affirmed. Sognier, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur fully in Divisions 1-3 and find that the holding in Division 4 is compelled by what is not in the record in addition to what is shown.

Hernandez pleaded guilty in Florida to an information originating in Arkansas, which charged him with violating 21 USC "Section 844 (a) and Section 846." The "Judgment and Probation/Commitment Order" form states, in the section entitled "sentence or probation order," that the court orders that: "Imposition of sentence of confinement is withheld and the defendant is placed on probation for THREE (3) YEARS. Special condition of probation is that the defendant shall remain employed during entire probationary period."

Section 844 (a), which the state contends this sentence falls under, provides for imprisonment for not more than one year, but a second or repetitious offense allows imprisonment of two years. Fines are also authorized, but probation is not expressly provided.

Hernandez contends that this is a sentence under Section 844 (b). It states that the court, with respect to a person who has not previously been convicted of a federal controlled substances crime, "may, without entering a judgment of guilty and with the consent of such person, defer further proceedings and place him on probation upon such reasonable conditions as it may require and for such period, not to exceed one year, as the court may prescribe." Satisfactory completion of probation results in discharge and dismissal without adjudication of guilt.

The other federal statute involved is Section 846, which provides for a separate penalty for attempt or conspiracy to commit a controlled substance crime. Such is punishable "by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the [substantive] offense, . . ." In this case it is one year, or two years if repetitive, as prescribed by Section 844 (a).

In answer to Hernandez' contention, first, the sentence of the Florida court does not contain the deferment language. Second, it contains the adjudication language, to wit: "the court adjudged the defendant guilty as charged and convicted . . ." Third, there is no record of consent to a subsection (b) deferment. Fourth, the latter is available only to a first offender. Since the maximum for a first offender would be two years' probation (one year for Section 844 (b) and one year for Section 846), and the court having imposed three years' probation, Hernandez must not have been eligible for subsection (b) treatment.

Thus I agree that the sentence was one of confinement, suspended upon satisfactory completion of three years' probation. This being the case, *Bennett v. State*, 132 Ga. App. 397, 398 (3) (208 SE2d 181) (1974) controls.

DECIDED APRIL 20, 1987 —
REHEARING DENIED MAY 5, 1987 —

*David R. Sweat, Jeanne M. L. Player*, for appellant.
*Gerald W. Brown, Assistant District Attorney*, for appellee.