A03A1176. PRUITT v. THE STATE.
(589 SE2d 864)

PHIPPS, Judge.

John Pruitt appeals his convictions of conspiracy to traffic in methamphetamine, possession of methamphetamine by ingestion, and possession of marijuana by ingestion.[1] He asserts that the state failed to prove venue for the possession of marijuana conviction and that insufficient evidence supports his conspiracy conviction. He also claims that the trial court erred by (1) limiting his testimony about

---

[1] The trial court sentenced Pruitt to twenty-five years (fifteen to serve) for the conspiracy to traffic charge, five years for the possession of methamphetamine charge, and twelve months for the possession of marijuana charge, with all of the sentences to run concurrently. Pruitt does not contest the sufficiency of his methamphetamine possession conviction or his five-year sentence for that crime.

his inability to post bond or hire his own attorney; (2) granting a motion to sever over his objection; (3) failing to give two of his requested jury charges; (4) imposing a fine; and (5) sentencing him under the wrong Code section. For reasons that follow, we affirm in part and reverse in part.

1. Pruitt claims the state failed to prove venue in Bartow County for his possession of marijuana by ingestion conviction. Viewed in the light most favorable to the verdict,[2] the record shows that after Pruitt's arrest in Bartow County, a urine sample taken from him in the Bartow County Sheriff's Office tested positive for the presence of tetrahydrocannabinol (THC) metabolites. The presence of these metabolites in Pruitt's urine meant that he had used marijuana within 48 to 72 hours before his urine sample was taken.

OCGA § 17-2-2 (h) provides:

> If in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed.

This statute applies when a drug possession charge results from the detection of metabolites that can remain in a defendant's urine two to four days after the drug was ingested.[3] Venue is appropriate in the county where the defendant was present immediately before being asked to provide the urine sample.[4] The record shows beyond a reasonable doubt that Pruitt was in Bartow County before being asked to provide the urine sample. Sufficient evidence supports venue in Bartow County for the possession of marijuana by ingestion conviction.

2. Pruitt claims insufficient evidence supports his conspiracy to traffic in methamphetamine conviction. "A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy."[5] "Any person who knowingly sells, manufactures, delivers, or brings into this state or has possession of 28 grams or more of methamphet-

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Green v. State*, 260 Ga. 625, 626 (1) (398 SE2d 360) (1990), cert. denied, *Green v. Georgia*, 500 U. S. 935 (111 SC 2059, 114 LE2d 464) (1991). See also *Dennis v. State*, 263 Ga. 257, 259 (4) (430 SE2d 742) (1993).
[4] Id.
[5] OCGA § 16-4-8.

amine . . . commits the felony offense of trafficking in methamphetamine."[6]

Pruitt was indicted for conspiracy to commit the crime of trafficking in methamphetamine "by entering into agreements and understandings to knowingly further the sell [sic] and delivery of multiple and various mixtures containing . . . methamphetamine, which over a course of multiple deliveries said mixtures containing said methamphetamine weighed in excess of twenty-eight (28) grams. . . ." Thus, the state's theory was that, when multiple deliveries were aggregated, the evidence was sufficient to prove that Pruitt conspired to sell or deliver methamphetamine in quantities that equaled a trafficking amount.

Pruitt first met his supplier, Mary Hernandez, at a Cobb County bar in November 2001. Shortly after meeting Hernandez, Pruitt left the bar to go to a party at her home in Kennesaw. Hernandez testified that during the party, in a "one time transaction," she sold Pruitt an ounce[7] of methamphetamine. After the sale, Pruitt discussed the possibility of future sales with her and inquired about the price for one-half ounce. Their discussion of possible future sales included where they would meet, how long it would take Hernandez to get the drugs for Pruitt, and the price for one-half ounce. There is no evidence in the record that Hernandez and Pruitt discussed or made arrangements for future one-ounce purchases of methamphetamine.

Hernandez testified that after the "one time" sale, Pruitt called her the following weekend and asked her to deliver one-half ounce of methamphetamine to his house, which she did. The state asked Hernandez the following questions about her agreement with Pruitt:

Q. Now, after that second transaction that you had, did you have any discussion at that point in time about future transactions?
A. No, that we'd just call each other. If he ever needed anything, he would call me.
Q. So it became an understood course of conduct?
A. Right. It was just contact. If he needed something he would call me.

Hernandez further testified that Pruitt contacted her almost every weekend for approximately four months and bought one-half ounce or less each time.

In March 2002, Hernandez was arrested on drug charges after a traffic stop and agreed to help the police arrest others. The police set

---

[6] OCGA § 16-13-31 (e).
[7] An ounce of methamphetamine equals 28 grams.

up a sting operation in which Hernandez would sell methamphetamine in a motel room under video surveillance. Pruitt called Hernandez and told her that he was coming to her motel room to get some methamphetamine. When Pruitt was holding one-half ounce of methamphetamine provided to him by Hernandez, the police entered the motel room and arrested him.

An investigating police officer testified that the quantities of methamphetamine that Hernandez was selling to Pruitt exceeded any amount Pruitt would purchase for his own personal use. Pruitt admitted that he sold some of the methamphetamine he purchased from Hernandez to support his habit and that this made him a drug dealer. Hernandez testified that she never talked with Pruitt about his resale business.

We find this evidence insufficient to support Pruitt's conspiracy to traffic in methamphetamine conviction. The crime of trafficking is defined by the amount of methamphetamine (28 grams) that is bought, sold, delivered, manufactured, or possessed.[8] Thus, a conspiracy to commit this crime must involve a conspiracy to buy, sell, deliver, manufacture, or possess 28 grams of methamphetamine. Additionally, the co-conspirators must act "together with" one another to commit the crime.[9] Thus,

> It has been held that the mere agreement of one person to buy contraband which another agrees to sell does not establish that the two acted in concert so as to support a finding of conspiracy.[10]

This is because they are not acting together to commit the same crime. "In such circumstance, the buyer's purpose is to buy; the seller's purpose is to sell. There is no joint objective."[11] In other words, they are not conspiring to buy the drugs together or to sell the drugs together. A buy-sell transaction can support a conspiracy conviction if "the supplier 'fronts' contraband to a recipient with the expectation that the latter will sell it and pay him from the proceeds. . . . [Cits.]"[12] In this circumstance, the supplier and the recipient are acting together to distribute the contraband; "[the supplier] retains a sufficient interest in the subsequent sale to establish that he acted in concert with the recipient to distribute the contraband."[13]

---

[8] OCGA § 16-13-31 (e).

[9] OCGA § 16-4-8.

[10] (Citations and punctuation omitted.) *Hernandez v. State*, 182 Ga. App. 797, 800 (1) (357 SE2d 131) (1987).

[11] *United States v. Ford*, 324 F2d 950, 952 (7th Cir. 1963).

[12] (Punctuation omitted.) *Hernandez*, supra, 182 Ga. App. at 800.

[13] (Citations and punctuation omitted.) Id.

The evidence in this case, even when viewed in the light most favorable to the verdict, fails to show that Pruitt and Hernandez entered into an agreement to act together to sell 28 grams of methamphetamine or that they entered into an agreement to act together to deliver 28 grams of methamphetamine. The evidence shows an initial one-ounce sale to Pruitt by Hernandez. There is no evidence that Hernandez "fronted" this purchase to Pruitt or had any knowledge about what Pruitt did with the one-ounce purchase. With regard to the subsequent sales, Hernandez simply agreed to sell Pruitt methamphetamine whenever he requested it. Each week for about four months, he called her and requested one-half ounce or less. Even if we were to accept the state's argument that Hernandez had an interest in the success of Pruitt's resale efforts, these subsequent sales fail to show an agreement to sell or deliver *28 grams*.

The state argues that the conspiracy related to selling 28 grams over time and that we should aggregate separate transactions together to find a conspiracy to traffic in 28 grams. This argument fails to solve the missing elements of the state's case — the lack of an *agreement* to act *together* to sell *28 grams* or an *agreement* to act *together* to deliver *28 grams*. An agreement relating to the sale or delivery of amounts of less than 28 grams cannot support a conspiracy to traffic in methamphetamine, even if the amounts sold over time amount to 28 grams or more. The plain language of the trafficking statute requires a transaction involving 28 grams or more. An agreement to commit this crime would therefore require an agreement to buy, sell, deliver, manufacture, or possess 28 grams of methamphetamine.

Even if we could somehow interpret the trafficking statute to support the state's aggregation argument and Pruitt's conviction, doing so would violate a well-established rule for construing criminal statutes.[14] Specifically, "when a criminal statute fairly and reasonably is subject to two constructions, one which would render an act criminal [under the statute], the other which would not, the statute *must* be construed strictly against the State and in favor of the accused."[15]

Because the state failed to prove that Pruitt and Hernandez agreed to act together to sell 28 grams of methamphetamine or agreed to act together to deliver 28 grams of methamphetamine, insufficient evidence supports Pruitt's conspiracy to traffic conviction.

---

[14] See, e.g., *Vines v. State*, 269 Ga. 438, 439 (499 SE2d 630) (1998).

[15] (Citation and punctuation omitted.) *Asberry v. State*, 220 Ga. App. 40, 42 (467 SE2d 225) (1996).

3. Pruitt contends the trial court erred when it granted the state's request to sever over his objection. The record shows that Pruitt objected to the state's motion to sever because it "would [sic] be detrimental to Mr. Pruitt's case to have this case severed, given the factual basis." The trial court then responded, "Based on that argument the Court will deny your objection to — the Court will grant the State's Motion to Sever. . . ." On appeal, Pruitt fails to argue how he was harmed by the severance. We find no reversible error. A trial court's discretionary ruling on a motion to sever will not be disturbed unless there is a clear showing of prejudice.[16]

4. Our holding in Division 2 makes Pruitt's remaining enumerations of error moot.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 10, 2003.

*Joshua D. Earwood*, for appellant.

*T. Joseph Campbell, District Attorney, Donald S. Smith, Assistant District Attorney*, for appellee.

---

[16] *Graham v. State*, 266 Ga. 543, 544 (5) (468 SE2d 363) (1996).