A10A0444. PEACOCK v. THE STATE.
(689 SE2d 853)

BLACKBURN, Presiding Judge.

Following a jury trial, Warren Peacock challenges the sufficiency of the evidence underlying his convictions for trafficking in methamphetamine,[1] conspiracy to distribute methamphetamine,[2] and possession of methamphetamine.[3] Although sufficient evidence sustained his convictions for possession and conspiracy to distribute, we agree with Peacock that no evidence showed he trafficked in methamphetamine. Accordingly, we affirm in part and reverse in part.

When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State.*[4] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia.*[5]

So viewed, the evidence shows that on February 28, 2000, Peacock, his wife, and two other men were standing in the yard of

---

[1] OCGA § 16-13-31 (e).
[2] OCGA §§ 16-4-8; 16-13-30 (b).
[3] OCGA § 16-13-30 (a).
[4] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).
[5] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Peacock's residence when police arrived to investigate an unspecified tip. Police obtained consent to search a small trailer located behind the residence, which trailer Peacock and his wife also controlled and occupied. In the trailer, police discovered some methamphetamine, which Peacock's wife said belonged to her but which she at trial admitted belonged to Peacock. On the person of one of the men, police found 157 grams of methamphetamine. Evidence showed that this man was a large-scale drug dealer who had for some time on a weekly basis been coming to Peacock's residence, each time "fronting" Peacock and his wife up to five "8-balls" (three-and-one-half grams each) of methamphetamine with the expectation and experience of being paid the following week. Because of the number of "8-balls" delivered each week, this large-scale drug dealer understood that Peacock and his wife were distributing the methamphetamine to others. Peacock's wife maintained a black book in which she recorded the drugs received from this large-scale drug dealer as well as the sales of these drugs to other persons who were known drug users.

Indicted for conspiracy to distribute methamphetamine (Count 1), trafficking in methamphetamine (Count 2), and possession of methamphetamine (Count 3),[6] Peacock and his wife were both found guilty on all charges, and Peacock was sentenced to 30 years to serve on each charge (sentences to run concurrently). Peacock appeals, challenging the sufficiency of the evidence on all charges.

1. Regarding the charge of possession of methamphetamine, Peacock claims that only his wife's testimony connects him to the methamphetamine found in the trailer, and that under OCGA § 24-4-8, the testimony of an accomplice cannot alone convict a defendant. However, the State also showed that Peacock occupied and controlled the trailer. "When the State presents evidence that the defendant owned or controlled the premises where the contraband was found, a rebuttable presumption arises that the defendant possessed the contraband." *Jones v. State*.[7] See *Williams v. State*[8] ("it is usually sufficient to convict where the proof shows the premises [where the contraband was found] to be occupied by and under the control of the accused") (punctuation omitted). Because the State charged both Peacock and his wife with joint possession of the methamphetamine, the State "did not bear the burden of showing that one or the other was in sole possession of the drug." *Waters v.*

---

[6] A fourth charge of possessing a firearm by a convicted felon was nol prossed at trial.
[7] *Jones v. State*, 254 Ga. App. 863, 865 (2) (564 SE2d 220) (2002).
[8] *Williams v. State*, 262 Ga. App. 67, 69 (1) (584 SE2d 625) (2003).

*State*.[9] The evidence sufficed to sustain this conviction.

2. Regarding the charge of conspiracy to distribute methamphetamine, OCGA § 16-4-8 provides: "A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." Interpreting this statute, *Okongwu v. State*[10] held that "[t]he [S]tate need only prove that two or more persons tacitly came to a mutual understanding to accomplish or to pursue a criminal objective. Conduct of co-conspirators, i.e., conduct which discloses a common design, may give rise to an inference of a conspiracy." (Punctuation omitted.)

Peacock claims that the evidence only showed that he received up to five "8-balls" of methamphetamine each week, which Peacock and his wife could have been consuming themselves rather than distributing to others. He points to OCGA § 24-4-6, arguing that the State did not present evidence excluding this reasonable hypothesis of innocence.

Peacock's argument ignores two vital pieces of evidence. First, the large-scale drug dealer was "fronting" them the drugs with the expectation that they would pay him the following week after they sold the drugs to other users. "[W]here the supplier 'fronts' contraband to a recipient with the expectation that the latter will sell it and pay him from the proceeds, it has been held that he retains a sufficient interest in the subsequent sale to establish that he acted in concert with the recipient to distribute the contraband." *Hernandez v. State*.[11] See *Osborn v. State*.[12]

Second, testimony showed that Peacock's wife kept a black book in which she recorded their sales to other known drug users. Thus, the evidence sufficed to sustain Peacock's conviction on the charge of conspiracy to distribute methamphetamine.

3. Regarding the charge of trafficking in methamphetamine, OCGA § 16-13-31 (e) provides: "Any person who knowingly . . . has possession of 28 grams or more of methamphetamine . . . commits the felony offense of trafficking in methamphetamine. . . ." In this case, the only person found in possession of more than 28 grams of methamphetamine was the large-scale drug dealer. The State argues that Peacock had constructive possession of this methamphetamine in that the large-scale drug dealer possessed it on Peacock's premises

---

[9] *Waters v. State*, 280 Ga. App. 566, 567-568 (634 SE2d 508) (2006).

[10] *Okongwu v. State*, 220 Ga. App. 59, 61 (1) (467 SE2d 368) (1996).

[11] *Hernandez v. State*, 182 Ga. App. 797, 800 (1) (357 SE2d 131) (1987).

[12] *Osborn v. State*, 161 Ga. App. 132, 134 (1) (291 SE2d 22) (1982).

and in that as a member of the conspiracy to distribute methamphetamine, the large-scale drug dealer's action in possessing the methamphetamine could be attributed to Peacock as a coconspirator. See *Shehee v. State*.[13] These arguments fail.

Regarding the premises as the location of the large-scale drug dealer at the time he was found with the drugs, this is an insufficient connection between those premises and the possession of the large-scale drug dealer's personal possession of those drugs to establish constructive possession attributable to Peacock. The cited case of *Lang v. State*[14] is inapplicable, as the *Lang* defendant not only owned the property where the marijuana nursery was built but also constructed the nursery building, purchased other necessary materials, and paid the extra electricity for the nursery's operation, closely tying him to the marijuana trafficking operation. As we have no such facts here, the evidence in this regard did not suffice to sustain the conviction for trafficking in methamphetamine, even under the theory of "party to a crime" as set forth in OCGA § 16-2-20. See *Benitez v. State*;[15] *Murrell v. State*.[16] Compare *Sherrer v. State*[17] (defendant was sufficiently connected to drug dealer's vehicle containing trafficking amount of drugs where that vehicle was parked in defendant's driveway for some time, the residence was secured by an extensive surveillance system, and defendant tried to extinguish a fire traced to a "meth lab" located on the premises). Nor are there any facts showing that Peacock had control over the trafficking amount of methamphetamine located on the large-scale drug dealer's person; indeed, such would be contrary to the whole "buy-sell" relationship, under which the large-scale drug dealer chose what and how much methamphetamine to advance to Peacock. Compare *Riley v. State*[18] (small-scale drug dealer had complete access to entire stash of large-scale drug dealer's cocaine and therefore could be criminally liable for trafficking).

Regarding the attribution of the large-scale drug dealer's possession to Peacock as a co-conspirator, *Pruitt v. State*[19] rejected this argument under similar circumstances, as a conspiracy to sell methamphetamine does not equate to a conspiracy to sell *28 grams* of methamphetamine (and thus the large-scale dealer's possession of 28 grams would not be attributed to the small dealer). Even if the State alleged that pursuant to the conspiracy, more than 28 grams

---

[13] *Shehee v. State*, 167 Ga. App. 542, 543 (1) (307 SE2d 54) (1983).

[14] *Lang v. State*, 171 Ga. App. 368, 368-369 (1) (320 SE2d 185) (1984).

[15] *Benitez v. State*, 295 Ga. App. 658, 659-660 (1) (673 SE2d 46) (2009).

[16] *Murrell v. State*, 200 Ga. App. 231, 232-233 (1) (407 SE2d 460) (1991).

[17] *Sherrer v. State*, 289 Ga. App. 156, 159-160 (2) (656 SE2d 258) (2008).

[18] *Riley v. State*, 292 Ga. App. 202, 206 (2) (663 SE2d 835) (2008).

[19] *Pruitt v. State*, 264 Ga. App. 44, 48 (2) (589 SE2d 864) (2003).

was sold over time (which was not even alleged let alone proven here) and argued that we should aggregate separate transactions together to find a conspiracy to traffic in 28 grams,

> this argument fails to solve the missing elements of the [S]tate's case — the lack of an *agreement* to act *together* to sell *28 grams* or an *agreement* to act *together* to deliver *28 grams*. An agreement relating to the sale or delivery of amounts of less than 28 grams cannot support a conspiracy to traffic in methamphetamine, even if the amounts sold over time amount to 28 grams or more. The plain language of the trafficking statute requires a transaction involving 28 grams or more. An agreement to commit this crime would therefore require an agreement to buy, sell, deliver, manufacture, or possess 28 grams of methamphetamine.

(Emphasis in original.) Id. Thus, here the large-scale drug dealer's possession of 157 grams of methamphetamine was not pursuant to the conspiracy to sell, as co-conspirators are "responsible for the acts of the others *only so far as* such acts are naturally or necessarily done pursuant to or in furtherance of the conspiracy." (Emphasis supplied.) *Shehee*, supra, 167 Ga. App. at 543 (1). Having such a large amount of methamphetamine was not necessary to the conspiracy to sell, where much smaller amounts had always been advanced to the Peacocks in the past.

For these reasons, the conviction on the trafficking charge cannot stand. Inasmuch as the sentences on the three counts were to run concurrently, no resentencing is required.

*Judgment affirmed as to convictions on Counts 1 and 3. Judgment reversed as to conviction on Count 2. Barnes and Bernes, JJ., concur.*

DECIDED JANUARY 6, 2010.

*Jad B. Johnson, David J. Dunn, Jr.*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellee.