A89A0235. DOVER v. THE STATE.
A89A0268. BARNES v. THE STATE.
(385 SE2d 417)

BEASLEY, Judge.

Dover and Barnes appeal their convictions for multiple offenses.

The Cagle family, Jimmy Lewis Cagle, his wife, Mary Elaine Cagle, and their son and daughter, Jimmy Lewayne Cagle and Lisa Cagle Reid, were charged along with Dover, Barnes and six others in Floyd County with violations of the Georgia RICO Act, OCGA § 16-14-1 et seq. This arose from a string of arsons allegedly solicited by Dover, Barnes, and the six others and carried out by the Cagles assisted by Larry Reid, Lisa's husband, named as an unindicted co-conspirator. All defendants except Dover and Barnes pled guilty to various offenses and testified against them.

Favorably to the verdict, the evidence showed that Barnes solicited the Cagles to burn the house in Floyd County where he lived and agreed to pay them. He assisted his daughter, to whom he had previously deeded the house, in submitting a claim to the insurance company.

Dover owned a Polk County trailer park where the father of Jimmy Lewis Cagle resided. Reid and Lisa wanted to purchase a trailer from Dover. He agreed to lower the price of the trailer and move it to Rome if they would torch a trailer resided in by McAllister, a tenant with whom he was having a dispute. After the fire, Dover made an insurance claim but discovered that the policy had not been renewed. He spoke by phone with Jimmy Lewis Cagle who advised him to get the number off an insured trailer and put it on the uninsured one. Dover did so and collected on the insurance.

The RICO count alleged that the defendants "did endeavor to acquire and maintain, directly and indirectly, and did acquire and maintain, directly and indirectly, an interest in and control of real property, personal property and money, . . . through a pattern of racketeering activity consisting of arson, false statements, . . . and mail fraud . . ." as more fully set out in the indictment.

The following predicate acts were alleged against Barnes and Dover in the RICO count:

Dover: (1) arson in the first degree by soliciting the burning of the McAllister trailer, (2) making false statements to fire officials that McAllister and her boyfriend burned the trailer, and (3) committing mail fraud, 18 USC § 1341, an offense defined as racketeering activity, by devising a scheme to defraud the insurance company of money and causing the mails to be used in furtherance of that scheme.

Barnes: (1) arson in the first degree by soliciting the burning of his daughter's house and (2) that Barnes committed mail fraud, 18 USC § 1341, an offense defined as racketeering activity, by devising a

scheme to defraud her insurance company of money and causing the mails to be used in furtherance of that scheme.

Substantive offenses were also charged:

Dover: Count IV, arson OCGA § 16-7-60 (also a predicate act); Count XII, making a false statement in matters within the jurisdiction of state and political subdivisions, OCGA § 16-10-20 (also a predicate act); Count XVII, making a false insurance claim, OCGA § 33-1-9.

Barnes: Count VII, arson OCGA § 16-7-60 (also a predicate act); Count XX, making a false insurance claim, OCGA § 33-1-9.

At the close of the State's case, the court granted directed verdicts to Barnes on Count XX and to Dover on Counts IV and XII.

Dover was found guilty of Count I, RICO, and Count XVII, making a false insurance claim. Barnes was found guilty of Count I, RICO, and Count VII, arson.

## Case No. A89A0235

1. Dover enumerates the failure of the court to grant his motion for directed verdict on the RICO count. The enumeration claims the evidence was insufficient as to proof of a pattern and as to proof that Dover was a member of an enterprise.

Georgia's RICO act, while it has similarities to the federal RICO statute, has a number of significant differences.

"The Georgia RICO statute is significantly broader than its federal counterpart in that OCGA § 16-14-4 (a) makes it unlawful for any person through [a pattern of racketeering activity or] proceeds derived from a pattern of racketeering activity to acquire or maintain any real property, or personal property of any nature, including money. In contrast, the federal RICO statute, 18 USC § 1962 (a), only targets investors who participate in the pattern of racketeering activity as a principal. See, 'Georgia Racketeer Influenced and Corrupt Organizations Act,' 20 Ga.BarJ. 34 (1983). And, 18 USC § 1962 (b) only makes it unlawful for any person through a pattern of racketeering activity to acquire or maintain any interest in or control of an enterprise; the federal statute does not contain a proscription against the acquisition of real and personal property, including money, which is not part of the enterprise. . . . 18 USC § 1962 (c), and . . . OCGA § 16-14-4 (b), are similar in that the . . . core provisions both make it unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity. In one respect, the Georgia RICO statute is narrower than the federal statute, in that OCGA § 16-14-3 (2) defines 'pattern of racketeering activity' as 'at least two incidents of racketeering activity that have the same or sim-

ilar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, . . . .' The federal RICO statute, of course, requires a connection between the racketeering activity and the enterprise, but it does not on its face require any interrelatedness between the predicate crimes themselves. See *United States v. Elliott*, 571 F2d 880, 899, note 23 (5th Cir. 1978)." *Chancey v. State*, 256 Ga. 415, 418 (349 SE2d 717) (1986). (Indention omitted).

The Supreme Court in *Chancey*, supra at 427 (4), upheld the act against a claim that it was unconstitutional due to vagueness and overbreadth.

As quoted above, the indictment here was framed only as a violation of OCGA § 16-14-4 (a), which does not require that there be proof of an "enterprise," but only that the accused "through a pattern of racketeering activity or proceeds derived therefrom, . . . acquire or maintain, directly or indirectly, any . . . , real property or personal property of any nature, including money." Dover received $6,000 in insurance proceeds. There was no requirement that an enterprise or Dover's association with it be proven and the failure to do so was not error.

Dover argued below that the pattern requirement had not been met because, although several crimes had been alleged as predicate acts, they all arose from "one incident," i.e., the burning of the trailer and obtaining insurance proceeds as a result, and such an incident was never meant to be covered by Georgia's RICO act. His argument is premised on the discussion of the federal act's "pattern" requirement contained in various circuit court cases applying *Sedima v. Imrex Co.*, 473 U. S. 479 (105 SC 3275, 87 LE2d 346) (1985), which focused on a requirement of "continuity" to establish a pattern. *Sedima*, supra at 496, fn. 14.

Although they do not control construction or application of the state RICO statute, federal circuit court opinions regarding the federal statute are instructive. The Fourth, Seventh and Eighth Circuits have held that a single fraudulent scheme, regardless of the number of crimes and predicate acts contained in it, will not constitute a pattern for federal RICO purposes. *Intl. Data Bank v. Zepkin*, 812 F2d 149, 154 (4) (4th Cir. 1987); *Lipin Enterprises v. Lee*, 803 F2d 322, 324 (7th Cir. 1986); *Superior Oil v. Fulmer*, 785 F2d 252 (8th Cir. 1986). The Fifth Circuit, however, has held that two related acts may be sufficient to form the required pattern, while the Eleventh Circuit also requires a showing of a threat of continuity. *Bank of America &c. v. Touche Ross &c.*, 782 F2d 966, 970 (6) (11th Cir. 1986); *R.A.G.S. Couture v. Hyatt*, 774 F2d 1350, 1355 (7) (5th Cir. 1985). The Eighth Circuit position has been rejected as to federal RICO in *H. J., Inc. v. Northwestern Bell Tel. Co.*, __ U. S. __ (57 USLW 4951) (June 26,

1989), which held that "[w]hat a plaintiff or prosecutor must prove is continuity of racketeering, or its threat, simpliciter." Id. at 4954.

Dover urges the adoption of the former approach, but that approach ignores the differences between the federal and Georgia statutes. OCGA § 16-14-3 (2) defines "pattern of racketeering activity" as engaging in "at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents . . . ." The Georgia statute requires the interconnectedness not contained in the wording of its federal counterpart.

Because of this difference, our legislature intended to and did, by virtue of OCGA §§ 16-14-4 (a) and 16-14-3 (2), subject to the coverage of our RICO statute two crimes, included in the statute as designated predicate acts, which are part of the same scheme, without the added burden of showing that defendant would continue the conduct or had been guilty of like conduct before the incidents charged as a RICO violation. See *United States v. Martino*, 648 F2d 367, 402 (93) (5th Cir. 1981), discussed in "Georgia Racketeer Influenced and Corrupt Organization Act," supra at 35.

Dover's additional argument, that the federal violation of mail fraud was not properly included by reference in the Georgia statute, was not presented below and will not be considered here for the first time. *Cooper v. State*, 188 Ga. App. 297 (1) (372 SE2d 679) (1988).

2. Dover's fourth enumeration contends that the court erred in failing to grant his motion for directed verdict on the RICO count due to the State's failure to prove venue in Floyd County.

OCGA § 16-14-11 provides that "[i]n any criminal proceeding brought pursuant to this chapter, the crime shall be considered to have been committed in any county in which an incident of racketeering occurred or in which an interest or control of an enterprise or real or personal property is acquired or maintained." "Racketeering activity" consists of any of the predicate acts defined in OCGA § 16-14-3 (3) (A).

The predicate acts alleged against Dover were mail fraud, arson, and making a false statement to the fire investigator concerning the arson. He was also charged for the same activities with the substantive violations of arson, false statement to the investigator, and insurance fraud (the latter is not included in the RICO statute as a predicate act). At the close of the State's case, a verdict of acquittal was granted to Dover on the arson and false statement charges, on the express bases that the State failed to prove venue as to both charges and the State failed to prove the false statement. Although as part of the pattern of racketeering activity the arson could still be considered on the RICO charge, venue as to RICO must be sought elsewhere,

specifically, where the mail fraud charge could be prosecuted.

Offenses under 18 USC § 1341, mail fraud, may be tried only in the federal district from which, to which, or through which the items were mailed. 18 USC § 3237; *United States v. Martino*, supra at 400 (82) & (83). Section 3237 is similar to OCGA § 17-2-2 (h). Venue under Georgia's RICO act which is premised upon a predicate act of mail fraud can be placed only in counties from which, to which, or through which such mailings occurred. There was no evidence of any mail as alleged in the mail fraud predicate act from, to, or through Floyd County. In fact, the predicate act of mail fraud as to Dover is alleged by the State to have occurred in Polk County.

There was no proof of venue as to Dover in Floyd County on the mail fraud predicate act. The only evidence is one phone call made by Cagle from Floyd County to Dover in Polk County in which Cagle advised Dover to alter the serial numbers on the burned trailer in order to get the insurance paid. As far as the mail fraud predicate act is concerned, this is unavailing since venue of that is premised on the use of the mails, which admittedly did not occur in Floyd County.

Dover's conviction as to Count I is reversed. No challenge to venue was made below as to Count XVII, the fraudulent insurance claim. That conviction is affirmed, there being sufficient evidence as to venue on that count. Co-conspirator Cagle phoned Dover from Floyd County and discussed how to alter the number on the Celebrity trailer, which was not insured, to make it appear to be the insured Pacemaker. After Dover notified the insurance company that there was a question concerning which trailer was destroyed, the claim was assigned to an independent adjuster in Floyd County (Rome) for investigation. He went from Floyd County to Polk County on two occasions to inspect the burned out trailer. He found the altered serial number on the second trip and left the proof of loss form with Dover for completion. He made a third trip to re-inspect all of the trailers. As a result of the adjuster's investigation and report, the insurer in Atlanta paid Dover's claim.

This evidence was sufficient. OCGA § 33-1-9 (b); *Jones v. State*, 245 Ga. 592, 596 (2) (266 SE2d 201) (1980); *Davis v. State*, 181 Ga. App. 28 (1) (351 SE2d 458) (1986).

3. The decision in Division 2 makes consideration of Dover's remaining enumerations unnecessary.

*Case No. A89A0268*

4. Barnes' first enumeration is based on his adoption of Dover's motion for directed verdict on the RICO count as discussed in Division 1 of this opinion, which is controlling here. He also contests the sufficiency of the evidence as to arson.

Barnes contended that he had nothing to do with the arson, while the Cagles and Reid said he did. The physical evidence as found by the fire investigator supported their version of the fire and the primary issue became credibility, a jury issue. OCGA § 24-9-80. The evidence was sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

5. Prior to the pleas of guilty of all co-defendants except Dover, Barnes filed a motion for severance, the denial of which he enumerates as error. The only ground of the motion enumerated is that failure to sever his case from Dover's created insurmountable difficulty and confusion for the jury. The denial of a motion to sever defendants pursuant to OCGA § 18-8-4 is a matter within the sound discretion of the trial court and its ruling will not be disturbed absent a clear abuse of such discretion. *Rivers v. State*, 178 Ga. App. 310, 311 (2) (342 SE2d 781) (1986): "In exercising its discretion, the trial court should consider 'whether a joint trial will create confusion of evidence and law; whether there is danger that evidence implicating one defendant will be considered against another defendant despite cautionary instructions to the contrary; and whether the co-defendants will press antagonistic defenses.' [Cit.]" See also *Glover v. State*, 188 Ga. App. 330, 331 (373 SE2d 39) (1988). No such abuse has been demonstrated. The court instructed the jury to separately consider the evidence as to each defendant, and their defenses were consistent. Both denied any involvement and attacked the veracity and self interest of the Cagles and Reid.

6. The fourth and sixth enumerations claim error in the admission of bank records and "tax records" as improperly placing Barnes' character into evidence, apparently on the basis that the evidence implied a failure to file a tax return. No tax records, however, were admitted due to the State's inability to properly authenticate them. Barnes testified without contradiction that he did file a return for 1986 and it reflected all of his income. No impropriety is shown.

As to the bank account records, no such objection will be considered here for the first time. *Fowler v. State*, 155 Ga. App. 76 (2) (270 SE2d 297) (1980). The same applies to questions asked by the court regarding the tax records.

7. Barnes' fifth enumeration alleges error in the court's allowance of certain questions asked by the State of Barnes' witness. He had testified that he had known Barnes since Barnes' childhood, his reputation was good, including his reputation for honesty, and he would believe him under oath. Before cross-examination, the State out of the presence of the jury advised defendant Barnes and the court that it intended to ask the witness if he knew of certain criminal charges and an allegation made against Barnes by Larry Reid in his diary that Barnes and Cagle had been involved in the purchase of stolen

motorcycles. The purpose was to challenge the basis for the witness' testimony that defendant's reputation was good. During the recess, the State fetched its file.

Defendant objected to the questioning on the ground that there were no convictions on these charges or proof that the crimes had actually occurred, the charges had been dismissed, and additionally as to the allegation regarding involvement in the purchase of stolen motorcycles, it was not even acted on by any law enforcement agency and there was no evidence the allegation was true. The gist of the objection was that there was no evidence the crimes had occurred. The court denied the objections and overruled the anticipatory motion for mistrial.

When the jury returned, the State established that the witness as to Barnes' good character was not aware that Barnes was charged in 1979 with two counts of bad checks, or that in 1982 he was charged with seven counts of theft by receiving, or that Larry Reid had made a statement that Barnes and Cagle were involved in the purchase of stolen motorcycles.

On appeal, Barnes cites *Clark v. State*, 186 Ga. App. 106, 109 (6) (366 SE2d 361) (1988), for the proposition that since the Reid allegation and the earlier criminal charges remained unproved as to actual occurrence, the questions to the witness were improper. As here, the questions in *Clark* were aimed "to determine the basis of the witness' testimony . . . ." Id. at 110. Regarding the charges referred to and the fact there were no convictions, it is not only convictions but, as quoted in *Clark*, also charges about which inquiry may be made, see *Whatley v. State*, 131 Ga. App. 320 (2) (205 SE2d 517) (1974); *Nassar v. State*, 253 Ga. 35, 36 (4) (315 SE2d 903) (1984), as well as arrests. *Montgomery v. State*, 173 Ga. App. 570, 572 (3) (327 SE2d 770) (1985); *Richardson v. State*, 177 Ga. App. 48, 49 (2) (338 SE2d 506) (1985). The State may cross-examine defendant's good-character witness as to his knowledge of defendant's specific acts of misconduct. *Moulder v. State*, 9 Ga. App. 438 (71 SE 682) (1911). See Green, Ga. Law of Evid., 3d ed., 1988, § 65.

Assuming that adequate proof of the charges was presented, as apparently acknowledged by defendant Barnes during argument and redirect examination on the issue, we find, however, no admissible evidence of the allegations supposedly contained in Reid's diary. In fact, except for the prosecutor's statement that Reid's allegations were contained in such a diary, which was never produced in court, nothing going to the foundation for these questions was offered. Reid never alluded to them during his testimony.

While the State is allowed on cross-examination of a character witness to ask if the witness has heard that defendant had been accused of or convicted of other crimes, it may not do so without mak-

ing an offer of proof as to these arrests, convictions, and uncharged specific "bad acts." *Nassar v. State*, supra; *Clark v. State*, supra at 110 (6); *Simmons v. State*, 168 Ga. App. 1, 4 (5) (308 SE2d 27) (1983); *Whatley v. State*, supra; see *Jones v. State*, 257 Ga. 753 (363 SE2d 529) (1988).

Moreover, it was so unlikely that the community would have knowledge of the contents of the Larry Reid diary so as to constitute a basis for Barnes' reputation or the witness' knowledge of reputation, that we cannot say that the question was a proper one to determine the basis of the witness' testimony. Thus it was irrelevant to the purpose for which it was ostensibly asked. Since it was obviously inflammatory and prejudicial, we must reverse on the basis of the principles discussed in *Hudson v. State*, 163 Ga. App. 845, 848 (4) (295 SE2d 123) (1982). The cross-examination in this regard "must be limited to matters that will be supported by admissible evidence." *Clark*, supra at 110.

Thus, the allowance of these questions without the proffer of proof was error.

8. The ruling in Division 7 makes consideration of the remaining enumerations unnecessary.

*Judgment affirmed in part and reversed in part in Case No. A89A0235. Judgment reversed in Case No. A89A0268. Carley, C. J., and McMurray, P. J., concur.*

DECIDED JULY 3, 1989 —
REHEARING DENIED JULY 25, 1989 —

*Gammon & Anderson, Wayne W. Gammon, W. Wright Gammon, Jr.*, for appellant (case no. A89A0235).

*Barkley & Garner, Larry J. Barkley*, for appellant (case no. A89A0268).

*Stephen F. Lanier, District Attorney, Harold Chambers, Assistant District Attorney*, for appellee.