A99A0373. DAVITTE v. THE STATE.
(520 SE2d 239)

RUFFIN, Judge.

Following a bench trial, Mark Davitte was convicted of one count of violating Georgia Racketeer Influenced & Corrupt Organizations (RICO) law and one count of aiding and abetting the possession of marijuana with intent to distribute. Davitte appeals, asserting that the evidence was insufficient to support a conviction on both counts and that the State failed to prove venue. For reasons that follow, we affirm.

1. The standard of review applicable to a challenge to the sufficiency of the evidence is well established:

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. To sustain the conviction, the evidence must be sufficient to authorize the [trier of fact's] finding of the defendant's guilt of the crime charged beyond a reasonable doubt.

(Punctuation omitted.) *James v. State*, 227 Ga. App. 907, 908 (1) (490 SE2d 556) (1997).

Applying this standard, the evidence showed that Carroll County Deputy Sheriff Clay Culver discovered marijuana at the home of Kenneth Stamps following a search in April 1997. Kenneth agreed to become an informant, and he identified as his immediate

supplier his cousin, Joseph Stamps,[1] who resided in Douglas County. Kenneth told Deputy Culver that Stamps, in turn, got his marijuana from a man who lived in south Georgia whom Kenneth knew only as the "Big Man." According to Deputy Culver, Kenneth informed him that every Sunday the "Big Man" — later identified as John Brannon — would drive to a house in Cobb County owned by Davitte. There, Brannon would deliver marijuana to Stamps and several other mid-level dealers. Stamps would then return home to Douglas County and distribute marijuana to approximately 20 lower-level dealers, including Kenneth. Kenneth testified that Brannon "fronted" the marijuana to Stamps, meaning that Stamps did not pay for the marijuana until after he had sold it, and that Stamps in turn "fronted" marijuana to Kenneth. Kenneth further testified that he had been present at Stamps' residence when Brannon arrived to resupply Stamps directly with marijuana, and on one occasion, Kenneth accompanied his cousin to Davitte's Cobb County home to pick up marijuana.

Based on this information, Deputy Culver planned for Kenneth to execute a controlled purchase of marijuana from Stamps on Sunday, April 6, 1997. The plan failed, however, when Stamps called Kenneth to his home that morning and "fronted" him marijuana, without requesting immediate payment. Kenneth delivered the marijuana to Culver, who turned it over to Douglas County authorities and later gave Kenneth marked currency to pay Stamps for it.

Several days later, Kenneth told Culver that Stamps would be distributing more marijuana the following Sunday, April 13. Anticipating that Stamps would first pick up marijuana from Brannon at Davitte's Cobb County home in the manner described by Kenneth, a surveillance team followed Stamps that morning in an effort to discover the location of Davitte's residence. The team lost Stamps at a red light, however. Later that day, Stamps called Kenneth to come pick up more marijuana, which Kenneth did. Kenneth then turned the marijuana over to police and was given marked currency to pay Stamps.

According to Kenneth, the next marijuana pickup was scheduled for Monday, April 21, 1997. Police again followed Stamps from his Douglas County residence and saw him drive to Davitte's house in Cobb County. Stamps entered the house, followed shortly thereafter by another, unidentified man. The two men later emerged, with Stamps carrying a guitar case and the unidentified man carrying a nylon bag. Both men conversed briefly with Davitte, who also came

---

[1] For the sake of clarity, we will refer to Kenneth Stamps as "Kenneth" and to Joseph Stamps as "Stamps."

outside, and then drove away. Later that day, Kenneth obtained more "fronted" marijuana from Stamps, turned it over to police, and was given more marked money to pay for it.

The next Sunday, April 27, law enforcement once again followed Stamps' vehicle to Cobb County, where Stamps and his wife entered Davitte's residence. Brannon arrived approximately five minutes later and also entered the residence. Stamps, Brannon, and Davitte exited the residence shortly thereafter, conversed briefly, and went back inside. Stamps and his wife, who was carrying a large beach bag, then left the house and drove away. Brannon left after speaking further with Davitte. Police stopped Brannon soon after he left. A search of Brannon's vehicle and person yielded one pound of marijuana and $4,650 in cash, including $340 in marked bills that police previously had given to Kenneth to pay Stamps. Police also searched Davitte's house and found a small quantity of dried marijuana, ten live marijuana plants under a grow lamp, scales commonly used to weigh small quantities of drugs, notes and records commonly kept by drug dealers to document amounts owed to them, and other drug paraphernalia. Finally, police searched the Stampses' residence after the Stampses arrived home and discovered approximately three pounds of marijuana in a beach bag on the kitchen floor.

At trial, the State presented telephone records showing that the April 13, 21, and 27 transactions were all preceded by one or more telephone calls from Brannon's residence to Stamps' residence. The State also showed that on the morning of Sunday, March 23 — before police began their investigation — a telephone call was placed from Davitte's residence to Brannon's residence.

A Douglas County grand jury returned an indictment against Davitte, Brannon, Stamps, and Mrs. Stamps, charging all four with violating Georgia's RICO and controlled substances laws. Four RICO predicate crimes were alleged against Davitte, including (1) aiding and abetting Brannon's transfer of marijuana to the Stampses on April 27 for transport to and distribution in Douglas County by making his home available as the location for such transfer; (2) aiding and abetting Brannon's possession of marijuana with intent to distribute on April 27 by making his home available as the location for such possession; (3) possession and manufacture of marijuana in his Cobb County home; and (4) using a telephone facility to further a violation of the drug laws by calling Brannon's residence on March 23. In addition to the RICO count, Davitte also was charged with three counts of aiding and abetting the possession of more than one ounce of marijuana with intent to distribute (on April 13, 21, and 27) and one count of conspiring to possess with intent to distribute more than one ounce of marijuana on April 27. Following the trial of Davitte and

Brannon,[2] the trial court found Davitte guilty of the RICO violation and possession with intent to distribute marijuana on April 21 and acquitted him of the remaining counts.

(a) Davitte asserts that the evidence was insufficient to support his RICO conviction. Before a defendant may be convicted of a RICO violation, he must have engaged in "at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents." OCGA § 16-14-3 (8); see also *Chancey v. State*, 256 Ga. 415, 417-418 (349 SE2d 717) (1986). Davitte argues that the State failed to prove that he engaged in at least two of the four predicate acts with which he was charged. We disagree.

First, Davitte argues that the first two predicate acts with which he was charged — aiding and abetting the Stampses' possession of marijuana and aiding and abetting Brannon's possession of marijuana — are in reality one act: the April 27 transaction in which Brannon transferred three pounds of marijuana to the Stampses and retained one pound for himself. Davitte asserts that this single transaction cannot be broken down into two predicate acts. However, Davitte does not challenge the sufficiency of the evidence to support the existence of *one* predicate act arising from the April 27 transaction. For the purpose of our analysis, we will assume that the evidence was sufficient to establish only one predicate act.

As to the third predicate act with which Davitte was charged, possessing and manufacturing marijuana at his residence, Davitte contends that the State failed to prove any interrelationship between this act and either the other charged predicate acts or the enterprise itself. To satisfy the interrelatedness requirement, the State must show that the defendant engaged in at least two "similar or interrelated incidents of racketeering activity." (Punctuation omitted.) *Caldwell v. State*, 253 Ga. 400, 402 (1) (321 SE2d 704) (1984). Here, the State showed that Davitte had ten live marijuana plants in his home, photographs of previous grows, scales used to weigh small quantities of drugs, and notes indicating amounts owed to him for drugs. The State presented testimony that these items are commonly used in connection with drug distribution schemes. Based on this evidence, the trial court could infer that Davitte's possession of marijuana and drug paraphernalia was similar or related to the other predicate acts (which charged facilitation of marijuana distribution) as well as the enterprise (the purpose of which was marijuana distribution). See,

---

[2] The trial court granted a defense motion for severance and tried Davitte and Brannon separately from the Stampses.

e.g., *Doe v. State*, 189 Ga. App. 793, 795 (377 SE2d 546) (1989) (presence of drug paraphernalia along with drugs supports inference of intent to distribute). Accordingly, the evidence was sufficient to support the trial court's conclusion that Davitte committed at least two of the predicate acts charged against him, thereby establishing Davitte's RICO violation.[3]

(b) Davitte also claims that the evidence was insufficient to support his conviction of possession of marijuana with intent to distribute on April 21, 1997. Essentially, Davitte argues that there was no evidence that Stamps obtained any drugs at his house that day. We disagree.

The State presented evidence that Stamps drove to Davitte's residence on April 21, entered the house, and emerged carrying a guitar case. He talked briefly with Davitte before leaving. Stamps then returned to Douglas County, where he later gave marijuana to Kenneth. This transaction is typical of the scheme described by Kenneth and is similar to the April 27 transaction, in which Mrs. Stamps emerged from Davitte's home carrying a beach bag later found to contain marijuana. Thus, the trial court could have inferred that Stamps obtained marijuana at Davitte's house on April 21 and that he carried it from the house in the guitar case. See *Lobdell v. State*, 256 Ga. 769, 773 (7) (353 SE2d 799) (1987) (jury could infer guilt based, in part, on defendant's pattern of similar crimes). The court could have further concluded that, by providing his home for use as the distribution center, Davitte aided and abetted Stamps' possession of the marijuana. "A person who intentionally aids or abets in the commission of a crime . . . may be convicted of the crime as a party to the crime." *Burks v. State*, 268 Ga. 504, 505 (491 SE2d 368) (1997).

That the evidence of Davitte's guilt is circumstantial does not mean the evidence was insufficient. To support the verdict,

> circumstantial evidence must only exclude reasonable hypotheses; it need not exclude every inference or hypothesis except that of the defendant's guilt. Under this rule, the state is not required to remove every possibility of innocence of the crime charged.

*Brown v. State*, 236 Ga. App. 166 (511 SE2d 276) (1999); see also *Shreve v. State*, 172 Ga. App. 190, 192 (322 SE2d 362) (1984).

2. Davitte contends that the State failed to prove beyond a reasonable doubt that venue was proper in Douglas County as to both

---

[3] Having so found, we need not consider whether the evidence was sufficient to support the fourth predicate act charged against Davitte, use of the telephone to facilitate a drug transaction.

the RICO count and the drug possession count. We find venue was proper on both charges.

(a) The venue provision in Georgia's RICO statute is as follows:

In any criminal proceeding brought pursuant to this chapter, the crime shall be considered to have been committed in any county in which an incident of racketeering occurred or in which an interest or control of an enterprise or real or personal property is acquired or maintained.

OCGA § 16-14-11. Thus, at least one of the predicate acts for the RICO charge must have been committed in the county in which the criminal proceeding is brought. *Chancey*, supra at 432-433 (6); *Dover v. State*, 192 Ga. App. 429, 432-433 (2) (385 SE2d 417) (1989). Davitte argues that none of the four predicate acts with which he personally was charged took place in Douglas County, so venue was improper as to him. The State responds that the law requires that only one racketeering incident occur in the county of prosecution; it does not require that the defendant, rather than another member of the enterprise, must have committed that act. Because other members of the drug ring committed predicate crimes in Douglas County, the State maintains that venue in Douglas County is proper as to Davitte. We need not resolve the question of whether venue is proper in a county where the defendant did not personally commit a predicate crime, however, because Davitte committed a predicate crime in Douglas County.

As discussed above, the evidence was sufficient to show that Davitte committed the predicate act of being a party to possession of marijuana with intent to distribute by allowing his residence to be used on April 27 as a location where Brannon transferred marijuana to the Stampses, who thereafter transported it to Douglas County for the purpose of distributing it. Davitte argues that the Stampses' possession of the marijuana in Douglas County with the intent to distribute it there is not attributable to him because his only involvement in the transaction occurred in Cobb County. It is true that there was no evidence that Davitte personally possessed marijuana in Douglas County.[4] However, as noted, "[a]ny party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto." OCGA § 16-2-21. This rule

embodies the theory of conspiracy insofar as it renders one

---

[4] As Davitte points out, the trial court found that Davitte never entered or telephoned Douglas County.

not directly involved in the commission of a crime responsible as a party thereto. Thus, where the crime is completed, a defendant may be convicted of it based on his activities as a conspirator, even though conspiracy is not alleged in the indictment. Venue in such a case is properly laid in the county in which the substantive offense is committed, even though the defendant may never have entered that county.

(Citations and punctuation omitted.) *Osborn v. State*, 161 Ga. App. 132, 133 (291 SE2d 22) (1982). Because the first predicate crime charged against Davitte involved possession of marijuana in Douglas County with the intent to distribute it there, the crime took place in Douglas County and venue is proper there.

The fact that the predicate act at issue involved "fronting" drugs, with the expectation of later payment, underscores the propriety of venue in Douglas County. See *Hernandez v. State*, 182 Ga. App. 797, 798-800 (1) (357 SE2d 131) (1987); *Osborn*, supra. The defendants in both *Hernandez* and *Osborn* "fronted" drugs to individuals who in turn sold them in other counties. Under such circumstances, we held that venue was proper in the county where the drugs were sold:

It has been held that the mere agreement of one person to buy contraband which another agrees to sell does not establish that the two acted in concert so as to support a finding of conspiracy. However, where the supplier "fronts" contraband to a recipient with the expectation that the latter will sell it and pay him from the proceeds, it has been held that he retains a sufficient interest in the subsequent sale to establish that he acted in concert with the recipient to distribute the contraband.

(Citations omitted.) *Osborn*, supra at 133-134; *Hernandez*, supra at 800. Here, the evidence showed that Brannon "fronted" the marijuana to the Stampses with the expectation that they would pay him from their proceeds of selling the marijuana in Douglas County. As an aider and abettor in this transaction, Davitte is criminally responsible although he may not personally have "fronted" the drugs; thus, venue is proper as to Davitte in Douglas County.

Davitte's citation to *Mullinax v. State*, 227 Ga. App. 670 (490 SE2d 201) (1997) is unavailing. In *Mullinax*, the defendant's acquaintance stole drugs from him in Douglas County and then transported them to Paulding County, where the defendant pursued her in an unsuccessful effort to retrieve the drugs. We held that the defendant could not be prosecuted for possession of the drugs in Paulding County because he "lost both actual and constructive pos-

session [of the drugs] in Douglas County and never regained possession in Paulding County." Id. at 673 (1). *Mullinax* is not controlling because the defendant in that case did not aid and abet the transfer of the drugs to Paulding County; rather, the drugs were stolen from him and taken there against his will. Here, by contrast, Davitte facilitated Brannon's transfer of the drugs to the Stampses and thus was a willing participant in the transportation of the drugs to Douglas County for purpose of distribution there. Accordingly, the RICO claim could properly be prosecuted against Davitte in Douglas County.

(b) Davitte also argues that venue was improper as to the April 21 drug possession count. This argument fails for the same reason Davitte's RICO venue argument fails. The evidence was sufficient to show that on April 21, Stamps picked up "fronted" marijuana at Davitte's house in Cobb County, returned to Douglas County with the marijuana, distributed it there, and then paid Brannon the following weekend with proceeds from the sale. Because Davitte aided and abetted this transaction and the transaction took place partly in Douglas County, Davitte could be prosecuted on this count in Douglas County.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 28, 1999.

*Akin & Tate, Samuel L. Tate III, Thomas N. Brunt,* for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney,* for appellee.