## A99A1933. BRANNON v. THE STATE.
(530 SE2d 761)

RUFFIN, Judge.

Following a bench trial in the Superior Court of Douglas County, John Brannon was convicted of violating Georgia Racketeer Influenced & Corrupt Organizations (RICO) law and of possession of marijuana with intent to distribute. On appeal, Brannon argues that the evidence was insufficient to support his convictions, that venue was improper in Douglas County, and that the trial court should have suppressed evidence seized in a search of his car and person. We reject these arguments and affirm.

1. On appeal, Brannon no longer enjoys a presumption of innocence. We review the evidence presented at trial in the light most favorable to the verdict, without weighing it or assessing the credibility of witnesses, to determine whether the evidence was legally sufficient under the standard of *Jackson v. Virginia*.[1]

We set forth in detail many of the facts relevant to this case in *Davitte v. State*,[2] which affirmed the conviction of Brannon's codefendant, Mark Davitte. Here, we summarize those facts and include others relevant only to Brannon's appeal.

Kenneth Stamps agreed to become an informant after Carroll County police discovered marijuana in his home. Kenneth told police that he obtained the marijuana from his cousin, Joseph Stamps,[3] whose sole supplier was a man in south Georgia known as the "big man." Kenneth described a pattern of activity in which the "big man" — later identified as Brannon — would drive on the weekends to Davitte's Cobb County home and distribute marijuana to Stamps and other mid-level dealers. After picking up several pounds of marijuana, Stamps would return to his Douglas County residence and distribute it to lower-level dealers, including Kenneth. Kenneth told police that Stamps would call these dealers ahead of time to let them know whether Brannon would be making a delivery during the coming weekend. According to Kenneth, Brannon "fronted" the marijuana to Stamps — meaning Stamps did not pay for it until after he had sold it — and Stamps in turn "fronted" it to Kenneth and other dealers.

Kenneth told police that he met Brannon at Stamps' house when Brannon went there to resupply Stamps directly with marijuana and he saw Brannon one other time at Davitte's house when he accompa-

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Taylor v. State*, 235 Ga. App. 323, 324 (1) (509 SE2d 388) (1998).

[2] 238 Ga. App. 720 (520 SE2d 239) (1999).

[3] For the sake of clarity, we will refer to Kenneth Stamps as "Kenneth" and to Joseph Stamps as "Stamps."

nied Stamps to pick up marijuana. Kenneth racially described Brannon to police as a heavy-set male, approximately 45 years old, about 5′ 10″ tall, with brown hair and a beard, who drove a Ford minivan. Kenneth positively identified Brannon in court as the man he had seen. Kenneth also told police that Stamps and Brannon were close friends who often conversed by telephone. Kenneth remained in contact with police for several weeks and informed them of Brannon's ongoing plans for drug deliveries. Specifically, Kenneth stated that Brannon would be driving to Cobb County to distribute marijuana on April 6, 13, 21, and 27, 1997.

Based on the information from Kenneth, police subpoenaed Stamps' telephone records and saw multiple calls to a number in south Georgia which they traced to Brannon. Police also tracked the drug activity described by Kenneth over several weekends. On Sunday, April 6, Kenneth received "fronted" marijuana from Stamps and turned it over to police, who later gave him marked currency to pay for it. On Sunday, April 13, in an effort to discover where Davitte lived, police followed Stamps to Cobb County but lost him at a red light that turned out to be only one block from Davitte's home. Police also set up surveillance at Stamps' residence that day and saw 13 different vehicles arrive at various times after Stamps returned home. The occupants of the vehicles would enter Stamps' residence briefly and then leave with bags of marijuana, and police overheard two of them discussing "rolling a joint." Kenneth also visited Stamps on April 13 to pick up more "fronted" marijuana, which he turned over to police in exchange for more marked currency.

On Monday, April 21, police again followed Stamps to Cobb County. Stamps stopped at Davitte's house, went inside for about 30 minutes, emerged with a guitar case, and drove away. Later that day, Kenneth once again received marijuana from Stamps, turned it over to police, and received marked currency to pay for it.

On Sunday, April 27, several police officers set up surveillance at Davitte's house, while others again followed Stamps there from Douglas County. Stamps and his wife entered Davitte's house around noon, and Brannon arrived about five minutes later in a Ford minivan. Stamps, Brannon, and Davitte talked briefly in the yard, then went into the house. The Stampses then left the house, with Mrs. Stamps carrying a beach bag, and Brannon left shortly thereafter carrying a grocery bag.

Police stopped Brannon soon after he left and searched his vehicle and person. They discovered approximately one pound of marijuana and $4,650 in cash, including $340 in marked bills that police had given to Kenneth to pay Stamps. Police also searched Davitte's residence and found marijuana and drug paraphernalia. Finally, they searched the Stampses' residence after the Stampses arrived

home and found approximately three pounds of marijuana in a beach bag.

A Douglas County grand jury indicted Brannon, Davitte, Stamps, and Mrs. Stamps, charging all four with violating Georgia's RICO and controlled substances laws. Seven RICO predicate crimes were alleged against Brannon, three of which were drug violations: (1) distribution of marijuana to the Stampses on April 27; (2) possession of marijuana on April 27 separate from that distributed to the Stampses; and (3) aiding and abetting the Stampses' distribution of marijuana in Douglas County by distributing marijuana to them on April 27. The other four alleged predicate crimes were use of a telephone to facilitate a violation of the drug laws on April 11, 13, 21, and 26. In addition to the RICO count, Brannon was charged with three counts of possession of marijuana with intent to distribute (on April 13, 21, and 27) and one count of conspiracy to distribute marijuana on April 27. Brannon and Davitte were tried together and convicted of the RICO violation and of possession with intent to distribute marijuana on April 21. They were acquitted on the other charges.[4]

Brannon asserts that the evidence was insufficient to support his RICO conviction. To prove a RICO violation, the State must show that the defendant committed two or more predicate criminal acts of the type included in the RICO statute as part of an enterprise engaging in a pattern of racketeering activity.[5] Brannon argues that the State failed to prove that he committed the requisite predicate criminal acts and failed to show the existence of an enterprise. We reject both arguments.

(a) As noted, Brannon was charged with three drug-related predicate acts and four telephone-related predicate acts. As for the drug counts, Brannon argues that the State wrongly charged him with three predicate acts based on the events of April 27 — distribution of marijuana, possession of marijuana, and aiding and abetting the distribution of marijuana — when, in reality, those acts were all part of the same transaction and can give rise to only one predicate crime. But Brannon does not challenge the sufficiency of the evidence to support at least *one* predicate crime based on the events of April 27. Thus, we will assume that the State proved one predicate drug crime.[6]

---

[4] With the exception of the April 13 possession charge, the acquittals were based not on insufficient evidence, but on principles of merger.

[5] See OCGA §§ 16-14-3 (8); 16-14-4 (b); *Brown v. State*, 191 Ga. App. 76, 77 (1) (381 SE2d 101) (1989).

[6] Davitte made the same argument on appeal, and, as here, we found it unnecessary to resolve the issue. *Davitte*, supra at 723 (1) (a).

To prove a RICO predicate act based on the telephone calls, the State had to prove that Brannon "knowingly or intentionally [used a] communication facility in committing or in causing or facilitating the commission" of a violation of the controlled substances laws.[7] Brannon argues that the State failed to show who made the telephone calls, the purpose of the calls, or the content of the calls. Accordingly, Brannon contends that there was no proof he used the telephone to facilitate a violation of the drug laws. We disagree.

The telephone records were admitted by stipulation at trial, and Brannon does not contest their accuracy on appeal. Those records show that telephone calls were placed from Brannon's residence in south Georgia to Stamps' residence in Douglasville on the afternoon of April 11, the morning of April 12, the morning of April 21, and the evening of April 26. Each call lasted approximately three minutes, and there were no other calls between the two residences during this period. The evidence at trial showed that Brannon drove to Cobb County and met Stamps at Davitte's house for the purpose of distributing marijuana on April 13, 21, and 27. Thus, each of these trips was preceded by a brief telephone call from Brannon's residence to Stamps' residence. Kenneth told police that Brannon and Stamps were friends who frequently talked on the telephone. Although there was no direct evidence as to the identity of the callers or the content of the conversations, under these circumstances, a trier of fact could infer that Brannon called Stamps on four occasions to make or confirm arrangements for his upcoming weekend drug delivery.[8] Indeed the evidence permitted no other reasonable hypothesis.[9] It strains belief to assume, as Brannon suggests, that someone else was using Brannon's telephone to call the Stamps residence or that Brannon was calling about something other than the ensuing drug transactions.

The authority cited by Brannon does not require a different result. In *Britt v. State*,[10] we reversed the defendant's conviction for using a telephone in the commission of a drug sale because the State presented no evidence that the defendant made a telephone call *at all*. The State merely assumed that the defendant must have made arrangements by telephone because he did not deliver the drugs or contact the seller personally. Here, by contrast, it is undisputed that telephone calls actually were made between the respective residences; inference is required only to establish exactly who was call-

---

[7] OCGA § 16-13-32.3 (a).
[8] See generally *Hunt v. State*, 196 Ga. App. 694, 695-696 (3) (396 SE2d 802) (1990) (discussing elements of OCGA § 16-13-32.3).
[9] See OCGA § 24-4-6.
[10] 202 Ga. App. 689, 691 (2) (415 SE2d 492) (1992).

ing and what was said. And while it is true that in *Kelleher v. State*,[11] the State presented a transcript of a monitored telephone conversation, we find no authority requiring such proof as a prerequisite for a conviction for using a telephone to facilitate a drug violation.

In sum, the State presented sufficient evidence that Brannon committed the telephone-related predicate crimes and at least one of the drug-related predicate crimes. Thus, the State proved the requisite number of predicate acts to sustain Brannon's RICO conviction.

(b) Next, Brannon contends that the State failed to present sufficient evidence of an enterprise. He asserts that the Stampses were not convicted of RICO violations and, as they are the only parties with whom he allegedly acted in concert, there can be no enterprise.[12] The relevant question, however, is not whether the Stampses — who were tried separately from Brannon — were convicted of RICO, but whether the evidence was sufficient to support *Brannon's* RICO conviction.[13] After the bench trial of Brannon and Davitte, the trial court specifically found that:

> Brannon, Davitte and both of the Stamps [sic] engaged together in an enterprise by associating together in fact. They had a common purpose: the importation of marijuana for distribution to others and for their mutual profit. Brannon brought the marijuana to Cobb County. Davitte provided a location for him to deliver it to the Stamps [sic] and others. The Stamps [sic] transported the contraband to Douglas County where they promptly distributed it.

The evidence in the record amply supports this finding that a criminal enterprise existed.

2. Brannon argues that venue was improper in Douglas County because none of the predicate crimes with which he was charged were committed in Douglas County. This is incorrect.

In a RICO prosecution, venue is proper "in any county in which an incident of racketeering occurred."[14] Four of the predicate acts charged against Brannon were telephone calls to Stamps' residence *in Douglas County*, thus establishing venue in Douglas County.

---

[11] 185 Ga. App. 774, 778-779 (2) (b) (365 SE2d 889) (1988) (physical precedent only). We note that *Kelleher* is not binding authority and that the conviction in that case was reversed for a reason not relevant to this appeal.

[12] We find no evidence in the record of how the RICO claims against the Stampses were disposed. For the purpose of this appeal, we will assume that the Stampses were not convicted of RICO violations.

[13] See *Smith v. State*, 250 Ga. 264 (297 SE2d 273) (1982); *Worthy v. State*, 180 Ga. App. 506, 507 (1) (349 SE2d 529) (1986).

[14] OCGA § 16-14-11; see also *Chancey v. State*, 256 Ga. 415, 432-433 (6) (349 SE2d 717) (1986).

Moreover, one of the drug-related predicate acts was that Brannon aided and abetted the Stampses' distribution of marijuana in Douglas County. As we held in *Davitte*, when a defendant aids and abets the distribution of drugs in a particular county, venue is proper in that county, even though the defendant may not personally have distributed drugs there.[15] Because the State presented sufficient evidence that Brannon committed one or more predicate acts in Douglas County, the State properly prosecuted him there.

3. Finally, Brannon argues that the trial court erred in denying his motion to suppress the fruits of the April 27 search of his vehicle and person. It is undisputed that the search was warrantless, that police did not see Brannon commit any traffic violations before stopping him, that the contraband found in his vehicle was not in plain view, and that he did not consent to the search. According to the State, the search was based largely on the information from Kenneth concerning Brannon's role in the drug scheme. Brannon argues, however, that Kenneth was not a reliable informant and that the information he provided could not establish probable cause. Again, we disagree.

We have held that "[w]here the details of a tip are corroborated by the personal observation of the investigating officers, a reliable informant's tip is sufficient to establish probable cause for a warrantless search."[16] Here, the evidence showed that, by April 27 (the date of the search), Kenneth had proven to be a reliable informant. Although Kenneth had not previously served as an informant, nearly all of the information he gave police over a three-week period concerning the scheme in question turned out to be accurate. He predicted that Stamps would drive to a house in Cobb County on three different days (April 6, 13, and 21) to pick up marijuana, return to his Douglas County residence, and distribute marijuana to mid-level dealers. On two of those dates, police confirmed that Stamps drove to Cobb County, and on one of those dates, they watched a procession of buyers arrive at Stamps' residence and leave with bags of marijuana in hand. On all three dates, Kenneth himself received "fronted" marijuana from Stamps and turned it over to police.

In addition to his accurate descriptions of the enterprise, police were able to verify many of the details provided by Kenneth. For example, Kenneth gave information about Stamps' criminal record, which police checked and found to be correct. He gave accurate descriptions of Brannon's physical appearance and vehicle, and he correctly stated that Stamps and Brannon spoke on the telephone.

---

[15] *Davitte*, supra at 725 (2) (a).
[16] (Punctuation omitted.) *Singleton v. State*, 236 Ga. App. 438, 439 (1) (511 SE2d 541) (1999).

Although Kenneth directed police to a house in Cobb County that turned out not to be Davitte's residence, the house was similar in appearance to Davitte's and only one mile away.

Not only had Kenneth given reliable information over the weeks leading up to the search in question, but he also accurately predicted the events of that day. Kenneth told police that Brannon would drive to Davitte's house on April 27 to deliver more marijuana. Police staked out Davitte's house and saw Brannon arrive there shortly after the Stampses. They also saw Brannon talk with Davitte and Stamps outside the house, then leave with a paper bag under his arm. Kenneth's previous reliability, coupled with the independent verification by police of his predictions of Brannon's behavior on the day of the search, provided probable cause for the search.[17]

Contrary to Brannon's assertion, it does not matter that the officer who ordered the stop of Brannon's vehicle and executed the search had very little personal contact with Kenneth. The evidence showed that Kenneth spoke mainly with an officer from Carroll County, who in turn communicated with police from other counties working in a joint effort to investigate the marijuana distribution scheme. "[P]robable cause may rest upon the collective knowledge of the police when there has been communication [between] them, rather than solely on the information possessed by the arresting officer."[18]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 9, 2000 —
RECONSIDERATION DENIED MARCH 23, 2000 — 

*Daniel B. Kane*, for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.

---

[17] See, e.g., *Dupree v. State*, 232 Ga. App. 573-574 (1) (502 SE2d 511) (1998) (accurate predictions of future behavior by confidential informant provided probable cause for warrantless search).

[18] (Punctuation omitted.) Id. (summarizing holding of *Goodman v. State*, 255 Ga. 226, 229 (13) (336 SE2d 757) (1985)).