A06A1827. GRAHAM v. THE STATE.
A06A1828. NIDA v. THE STATE.
(639 SE2d 384)

SMITH, Presiding Judge.
　A Newton County grand jury indicted Eddie James Lee Graham, Apollo Nida, and four other individuals on a twenty-count indictment alleging violation of the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act and multiple counts of theft by receiving stolen property, forgery in the first degree, sale or possession of a vehicle from which the vehicle identification number (VIN) had been removed, and possession of counterfeit insurance identification. Graham and Nida were tried together with co-defendant Melvin Thomas, Sr.[1] Graham was convicted on the RICO count as well as one count of theft by receiving and three counts of the VIN offense.[2] Nida was convicted on the RICO count. Their amended motions for new trial were denied, and they appeal, each enumerating the same five errors with respect to the RICO count. Finding no error, we affirm.
　1. Appellants first contend that the trial court erred in instructing the jury on the entire RICO statute, while the indictment did not charge them with a violation of subsection (a). We disagree.
　OCGA § 16-14-4 provides:

---

　[1] Thomas's conviction was appealed separately. *Thomas v. State*, 282 Ga. App. 1 (637 SE2d 502) (2006).
　[2] The jury acquitted Graham on one count of theft by receiving. As we note in Division 5, infra, the trial court directed a verdict of acquittal on the remaining counts of the indictment.

(a) It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

(b) It is unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

(c) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section.

The indictment charged appellants with conspiracy under subsection (c), but appellants contend that the indictment charged them only with conspiracy to violate subsection (b) and not subsection (a) of OCGA § 16-14-4. As a result, they claim, the trial court's instructions with respect to subsection (a) allowed the jury to find appellants guilty of a crime not charged in the indictment. Appellants contend that because the indictment does not contain the precise words "acquire," "maintain," and "interest" conjunctively, they were not given notice that subsection (a) was charged, and the trial court therefore erred in instructing the jury on it.

Although generally it is not error to charge the jury on a portion of the Code section that may be inapplicable under the facts in evidence, it is error to charge the jury that a crime may be committed by either of two methods, when the indictment charges it was committed by one specific method. If there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment, then the error is harmful.

(Citations and punctuation omitted.) *Chapman v. State*, 273 Ga. 865, 868 (2) (548 SE2d 278) (2001).

Appellants rely upon *Chapman* and upon *Drewry v. State*, 201 Ga. App. 674 (411 SE2d 898) (1991), to argue that the indictment as worded does not allege a violation of OCGA § 16-14-4 (a). Contrary to appellants' argument, our holding in *Drewry* that "pecuniary gain" language in an indictment is sufficient to allege an offense under OCGA § 16-14-4 (b) does not foreclose an allegation of an offense under subsection (a). Similarly, while an indictment may sometimes be held sufficient because it tracks the language of the relevant Code

section, *Raheem v. State*, 275 Ga. 87, 89 (560 SE2d 680) (2002), it is not required that an indictment track the language of the statute:

> In testing the sufficiency of an indictment, it must be borne in mind that the indictment need not quote literally the exact language of the statute which the defendant allegedly violated. Nor is it necessary that the indictment specify the crime allegedly committed by name or Code section. . . . The true test of the sufficiency of the indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

(Citations and punctuation omitted.) *Bostic v. State*, 173 Ga. App. 494, 495 (1) (326 SE2d 849) (1985).

Count 1 of the indictment alleges in pertinent part that the defendants "conspired among themselves and with others to develop and execute an interrelated pattern of criminal activity motivated by, and the effect of which was, pecuniary gain." It then enumerates nine predicate criminal offenses employed "in executing and concealing this scheme," and charges the defendants with conspiracy "to formulate, implement, and execute a plan, both directly and indirectly, to participate in an interrelated pattern of racketeering activity motivated by, and the effect of which was, pecuniary gain as follows:" and enumerates the various acts undertaken "to obtain, disguise, and sell certain stolen vehicles." Count 1 further alleges that the defendants obtained stolen vehicles, placed false VINs on them, created false certificates of title, and then sold the vehicles "for cash and other items of value," and that Graham negotiated the sale of stolen vehicles, delivered some of them to the purchasers, provided forged titles, and "accepted cash in varying amounts for the purchase of these vehicles." It alleges that Nida was discovered on several occasions to have stolen vehicles in his possession, one with an altered VIN, and that the police found counterfeit vehicle registrations, a fraudulent title, forged financial records, and a forged identification card in Nida's possession or in his hotel room. Finally, the indictment alleges that Nida met with other defendants to assist in the sale of a vehicle and to exchange forged documents and VIN decals in furtherance of the alleged conspiracy "to sell vehicles with altered identification numbers."

This lengthy and detailed indictment placed both appellants on notice that they were charged with conspiracy to violate OCGA § 16-14-4 (a), as it alleged that they conspired to acquire control of personal property in the form of vehicles, money, and title or registration documents through a pattern of racketeering activity. The trial court therefore did not err in instructing the jury on OCGA § 16-14-4 (a), and the instructions did not violate the rule laid down by *Chapman*, supra, 273 Ga. at 868.

2. Appellants next contend that the trial court erred in instructing the jury that it could find venue in any county where interest or control of an enterprise or property was acquired or maintained, arguing that this language applies only to violations of subsection (a) of OCGA § 16-14-4. Since we have held in Division 1 that the indictment fairly apprised appellants that they were charged with conspiracy to violate the provisions of OCGA § 16-14-4 (a) as well as subsection (b), this contention is without merit.

3. Appellants also contend that the State failed to prove venue in Newton County. We disagree. OCGA § 16-14-11 provides that in a criminal RICO proceeding "the crime shall be considered to have been committed in any county in which an incident of racketeering occurred or in which an interest or control of an enterprise or real or personal property is acquired or maintained." Under this Code section, "both the corrupt agreement and an overt act must be proved; venue may be laid in the county of either, or, if there are several overt acts, in a county where any of them was committed." (Citations, punctuation and emphasis omitted.) *Chancey v. State*, 256 Ga. 415, 433 (6) (349 SE2d 717) (1986); see also *Dover v. State*, 192 Ga. App. 429, 432-433 (2) (385 SE2d 417) (1989).

Venue is a jurisdictional fact; it is an essential element in proving guilt. *Hollis v. State*, 269 Ga. App. 159, 161 (2) (603 SE2d 516) (2004). The State has the burden of proving venue beyond a reasonable doubt, but it may do so using circumstantial, as well as direct, evidence. Id. at 162 (2). Whether the State has proved venue is a question for the jury, and we will affirm a jury's conclusion that venue is proper if any evidence supports it. Id.

Here, the evidence showed that Graham sold four stolen vehicles to residents of Newton County and provided false Ohio certificates of title to the purchasers. After the titles were registered in Newton County, the certificates were recognized as forgeries by an employee of the Georgia Department of Motor Vehicle Safety (GDMVS). A GDMVS investigator who specialized in auto crime title fraud testified that the forged certificates of title were manufactured from copies of a single valid Ohio certificate of title in the name of William Spearman. Virginia Department of Motor Vehicle records showed a

Virginia driver's license issued in the name of William W. Spearman, but with Nida's photograph on it.

Graham, who lived in Newton County, negotiated sales and accepted payment for some of the stolen vehicles in Newton County. These and other stolen vehicles were recovered by the police in Newton County. Graham telephoned one of the Newton County residents who had purchased a truck to tell him "that the [Federal Bureau of Investigation] was looking for him and the trucks were hot" and to hide or get rid of them.

The stolen vehicles were linked together not only by forged titles with a common source but also by similar false VIN decals superimposed over the original VINs in the stolen vehicles. The GDMVS investigator testified that the forged VIN decals were printed on a computer with a particular software program, laminated in plastic, and superimposed over the actual VIN in the stolen vehicles. The investigator testified that the decals had "pretty much the same type of printing" and were all laminated in the manner he described.

Defendant Gerald Rillie, who testified at trial under an agreement with the State, testified that he researched "clean" VINs and provided the numbers to Nida for attachment to stolen vehicles. Rillie testified that Nida provided the forged VIN decal that was found in a vehicle sold in Newton County. Rillie also identified a handwritten list or chart that he gave to the police, showing the organization of the car theft ring and Nida's place in it as the man "to get the numbers done."

This evidence amply demonstrates that Graham and Nida committed predicate acts of theft by receiving, forgery, and possession of vehicles with false VINs, several of which occurred in Newton County. Although the evidence does not show that Nida alone sold or personally possessed any of the stolen or altered vehicles in Newton County or committed forgery in that county, the evidence presented was sufficient to show that at least one predicate act of the conspiracy took place in Newton County and that venue was proper there. See *Davitte v. State*, 238 Ga. App. 720, 726 (2) (a) (520 SE2d 239) (1999). Appellants' reliance on *Dover v. State*, supra, 192 Ga. App. 429, is unavailing, as that case involved the limited venue applicable to a single predicate act of mail fraud, a federal offense.

4. Appellants next complain that the trial court erred in its recharge to the jury on the issues of conspiracy and knowledge. After the jury had deliberated for some time, it sent a handwritten question to the court: "Dear Judge, according to count number 15, does Eddie have to know that these cars are knowingly stolen or defaced, OCGA § 40-4-22 Pg. 27, Pg. 12 E. [sic]." Without objection from either counsel, the trial court wrote "Answer: Yes" on the note and returned a copy to the jury. A short time later, the trial court decided sua sponte

to clarify its answer by recharging the jury on the issue of conspiracy as it pertained to Count 1. All defendants objected and moved for a mistrial, which was denied.

The jury returned to the courtroom, and the trial court explained that while his initial answer of "Yes" was correct as to Count 15, a VIN charge, as to Count 1 (E) it was incorrect because that count alleges conspiracy. The trial court then recharged the law of conspiracy. Asked if that clarified the question, a juror responded with a request for an additional clarification, and the trial court additionally recharged the jury on knowledge and intent. The trial court prefaced this charge with a caution that "whenever I read you a portion of the charge, it does not mean to unduly emphasize that part of the charge. You have to consider the charge of law as a whole and all principles of law in that charge have to be considered together." When asked if that answered the question, a juror responded with a question regarding the difference between the conspiracy count and the other count, to which the trial court responded "what is different about number one from 15 is that number one was the conspiracy to commit." The trial court asked again, "So are y'all clear on that now?" and a juror responded, "Yes. Solves the problem." Counsel did not renew their objections or their motions for mistrial after the additional charges.

While appellants assert that the recharge "totally confused the jury, as shown by the juror comments," it is apparent that the trial court repeatedly asked jurors if they had any questions and patiently answered them until they were satisfied.

> [O]ur case law contains no general mandate requiring the trial courts, when responding to a jury's request for a recharge on a particular issue, to also recharge on all principles asserted in connection with that issue. Moreover, where the jury requests further instructions upon a particular phase of the case, the court in its discretion may recharge them in full, or only upon the point or points requested.

(Citations, punctuation, footnotes and emphasis omitted.) *Salahuddin v. State*, 277 Ga. 561, 564-565 (4) (592 SE2d 410) (2004). Appellants did not object to the wording of the recharge as given, but only to the giving of a recharge at all. In any event, the trial court took care not to mislead or confuse the jurors, did not curtail the jury's consideration of the issues, and explicitly instructed the jurors not to place undue weight upon the recharged portions but to consider the entire charge as a whole. Under these circumstances, the trial court did not abuse its discretion in its recharge to the jury. *Duffie v. State*, 273 Ga. 314, 316 (2) (540 SE2d 194) (2001).

5. Finally, appellants contend that the trial court impermissibly commented on the evidence in violation of OCGA § 17-8-57 when it instructed the jury on the redacted indictment prepared after the court directed a verdict as to multiple counts of the indictment. Appellants now contend that the trial court impermissibly commented on the evidence by informing the jury that directed verdicts had been granted on certain counts "that venue has not been shown or evidence has not been produced on," because the court thereby implied to the jury that venue *had* been proved on the counts that remained.

As appellants acknowledge, however, they did not raise a contemporaneous objection to or move for a mistrial based on the trial court's statement. A violation of OCGA § 17-8-57 is not reached unless the defendants object or move for a mistrial. Here, appellants did not object or move for a mistrial, and they therefore have "failed to preserve for appellate review any alleged violation of OCGA § 17-8-57." (Citations and punctuation omitted.) *Brown v. State*, 221 Ga. App. 454 (471 SE2d 527) (1996). This enumeration presents nothing for review.

*Judgments affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED NOVEMBER 28, 2006.

*John T. Strauss*, for appellants.
*W. Kendall Wynne, Jr., District Attorney, Layla V. Hinton, Assistant District Attorney*, for appellee.