### A08A1213. HONEYCUTT v. THE STATE.
(668 SE2d 19)

ANDREWS, Judge.

On appeal from his conviction for trafficking in methamphetamine and conspiring to manufacture the drug, Jeffrey Honeycutt argues that the trial court erred when it denied his motion for a directed verdict of acquittal. We affirm his conviction for trafficking but reverse his conviction for conspiring to manufacture because the record contains no evidence of an agreement between him and the alleged co-conspirator to do so.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We review a trial court's denial of a defendant's motion for directed verdict of acquittal under the same standard. *Williams v. State*, 237 Ga. App. 814, 815 (1) (515 SE2d 875) (1999).

So viewed, the record shows that Honeycutt had jumped bail in Tennessee and was staying at a house in Dade County. On July 19, 2003, Melissa Reina, Honeycutt's girlfriend and a meth user, came to the house and noticed several people there, including Honeycutt. Reina smelled a lab on the premises and knew that Honeycutt was involved in its operation. When everyone except Honeycutt and his girlfriend left the house, the two got into a violent argument, and Reina threatened to call police. Honeycutt then left the house accompanied by a dog and carrying a gun he and Reina had bought in his pants.

On the same day, a Dade County officer saw Honeycutt walking on a road in the area with a dog. Two firemen picked Honeycutt up and dropped him at a nearby convenience store. The officer found

Honeycutt behind the store. Honeycutt had a black eye and scratches on his arms and hands and was dirty and disoriented. After Honeycutt gave inconsistent answers to questions about what he was doing, the officer found a 9-millimeter gun where Honeycutt had been standing. When Honeycutt identified the gun as his and said he had carried it in his pocket, the officer arrested him for carrying a concealed weapon.

On July 23, a bounty hunter received a call from Reina saying that Honeycutt could be found at the Dade County residence. Reina then led two bounty hunters to the residence, where they found components of a meth lab and contacted the Dade County Sheriff's Office. The investigating officers called to the scene could smell the drug, and found lab components, large amounts of ingredients, and methamphetamine on the premises. They also found photographs of Honeycutt in the house. After his arrest, Honeycutt wrote letters to Reina begging her not to cooperate with police.

Honeycutt was charged with trafficking in methamphetamine by knowingly manufacturing it (Count 1) and by possessing more than 28 grams of a mixture containing it (Count 2), methamphetamine possession (Count 3), conspiracy to manufacture methamphetamine (Count 4), and influencing a witness (Count 5). At trial, the State introduced evidence of a March 2003 similar transaction involving methamphetamine manufacturing by Honeycutt. Honeycutt was found guilty only of trafficking by manufacture and conspiracy (Counts 1 and 4).

1. Reina testified that Honeycutt was involved in the lab's manufacture of methamphetamine. While Honeycutt is correct that "a person may not be convicted of a felony based solely on the uncorroborated testimony of an accomplice," *Evans v. State*, 288 Ga. App. 103, 105 (1) (653 SE2d 520) (2007), "corroboration is not required if there is a total lack of evidence in the record that the witness at issue was an accomplice." (Citations and punctuation omitted.) Id. As we hold in Division 2 below, the record before us does not contain evidence authorizing the conclusion that Reina was an accomplice to Honeycutt in the manufacture of methamphetamine. Even if corroboration were necessary, however, the officer's sighting of Honeycutt on the road with a dog within walking distance of the residence, Honeycutt's appearance at the convenience store consistent with the violent argument described by Reina, his arrest there with the gun she said he had left with, and the discovery of Honeycutt's photographs at the residence would be sufficient. See id. at 105-106 (1). It follows that the evidence outlined above was sufficient to sustain Honeycutt's conviction for trafficking in methamphetamine. See OCGA § 16-13-31 (f) (defining methamphetamine

trafficking as the knowing manufacture of the drug); *Evans*, 288 Ga. App. at 106 (1).

2. The indictment alleged not only that Honeycutt had conspired with Reina to manufacture methamphetamine, but that the overt act establishing the conspiracy was the same as its object — that is, the manufacture of the drug. Nothing in the record before us, however, permits the conclusion that the two ever agreed to manufacture or actually manufactured methamphetamine. Reina testified that she had never assisted anyone in the production of methamphetamine, that she was not involved in the operations at the house, and that she did not see anyone cooking the drug there. Honeycutt took the stand only to declare that he did not wish to testify. The State put on no other witnesses involved in the lab's operation, and no police or investigative witness testified that Reina was involved in the manufacturing process.[1] Finally, the fact that Reina was convicted for manufacturing the drug in a related proceeding arising from the same facts cannot be taken as evidence of that fact for purposes of this case. See *Cobb v. Garner*, 158 Ga. App. 110, 112 (3) (279 SE2d 280) (1981) (guilty plea is inadmissible to prove facts at issue in case-in-chief).

The State seeks to forestall these conclusions by pointing to Reina's testimony that she and Honeycutt used meth together, that the two had been together at a meth lab before, and that she knew what meth smelled like, as well as to the similar transaction evidence against Honeycutt and his letters asking her to keep silent. As we have held in another methamphetamine trafficking case, however, Reina's testimony shows only that as an admitted meth user, she was familiar with meth labs, and not that she and Honeycutt reached any *agreement* to manufacture the drug at this place and time. See *Pruitt v. State*, 264 Ga. App. 44, 48 (2) (589 SE2d 864) (2003) (reversing conviction for conspiracy to traffic methamphetamine where evidence failed to show agreement of buyer and seller that buyer would resell the drug). Likewise, neither Honeycutt's criminal history nor his jailhouse letters provides any evidence that Reina and he agreed to manufacture methamphetamine in Dade County on or before July 23, 2003. It follows that Honeycutt's conviction for conspiring to manufacture methamphetamine must be reversed. Id.

*Judgment affirmed in part and reversed in part. Ruffin, P. J., and Bernes, J., concur.*

---

[1] For example, when the bounty hunter was asked whether Reina had "said that she had been cooking meth for the past week," he corrected his interrogator: "That Jeff Honeycutt had been."

DECIDED SEPTEMBER 19, 2008.

*Daniel J. Ripper*, for appellant.
*Brian M. Rickman, District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellee.